In the

# United States Court of Appeals

## For the Seventh Circuit

No. 05-3819

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RICHARD TAYLOR,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 04-CR-10040—**Michael M. Mihm**, *Judge.*

ARGUED SEPTEMBER 13, 2006—DECIDED DECEMBER 20, 2006

Before BAUER, WOOD, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* On March 9, 2005, a jury found Richard Taylor guilty of manufacturing and possessing with the intent to manufacture more than 1000 marijuana plants. The district court judge sentenced Taylor to 120 months' imprisonment, the statutory mandatory minimum. Taylor appeals, challenging the district court's denial of his motion to suppress on the grounds that the search warrant affiant intentionally omitted information about his confidential source that impacted the issuing judge's probable cause determination. We affirm the district court's denial of Taylor's motion to suppress because even considering the omitted information, the search warrant affidavit contained sufficient

information to find probable cause to search. Next, Taylor challenges his sentence by alleging that the jury's special finding that he manufactured or possessed with the intent to manufacture more than 1000 marijuana plants was based solely on inadmissible hearsay concerning the number of marijuana plants that were seized from his home and unsupported by the evidence. We vacate the jury's special finding because we conclude that the district court committed plain error in allowing the hearsay testimony regarding the number of marijuana plants, resulting in a miscarriage of justice in Taylor's sentencing. We also vacate Taylor's sentence and remand this case for resentencing.

## I. BACKGROUND

### A. The Procurement and Execution of the Search Warrant

On May 14, 2004, Detective John Atteberry of the Bloomington Police Department spoke with a confidential source ("CS 241") about a marijuana-growing operation run by Taylor out of his home at 909 South East Street in Bloomington, Illinois. According to CS 241, Taylor started the operation fifteen years earlier and grew 150 to 200 plants each year at a property near Quincy, Illinois, resulting in an annual cash value of $500,000. CS 241 told Detective Atteberry that Taylor was presently growing 160 plants on his property beneath a tarp next to a boat and near a six-foot high fence. CS 241 also gave the detective a physical description of Taylor and his home. Following his conversation with CS 241, Detective Atteberry conducted drive-by surveillance of the property and observed a man matching Taylor's description walk toward the front of the house. The detective also observed a boat in the back of the home covered by a white tarp. On May 24, 2004, Detective Atteberry watched

CS 241 place a phone call to Taylor to confirm that the plants were still present at the property.

That same day, Detective Atteberry appeared before a McLean County judge and presented a search warrant affidavit that included the above-recited information. The judge issued a search warrant, and Detective Atteberry executed it at Taylor's home while Taylor's wife was present. During the search, another detective, Kenneth Bays, discovered marijuana plants in Taylor's backyard growing out of multiple styrofoam cups that filled four large containers, or flats, that were located between a fence and a boat. After the plants were removed from the property, Detective Bays generated a police report, stating that 1417 marijuana plants had been counted.

Taylor, who was not home during the search, was later arrested and indicted for unlawful manufacture of and possession with intent to manufacture more than 1000 marijuana plants in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Taylor moved to quash the search warrant and suppress the evidence seized from his property on several grounds; however, only those pertinent to this appeal will be discussed in detail.[1] First, Taylor alleged that Detective Atteberry deliberately and with reckless disregard for the truth omitted information from the warrant affidavit regarding informant CS 241's criminal history, probation violations, drug usage, and cash pay-

---

[1] Taylor also claimed in his motion to suppress that the police failed to properly "knock and announce" before entering Taylor's home, *see Wilson v. Arkansas*, 514 U.S. 927 (1995), and that they obtained Taylor's post-arrest statements in violation of his Fifth Amendment right against self-incrimination, *see Miranda v. Arizona*, 384 U.S. 436 (1966). After testimony was heard on these issues at the motion to suppress hearing, the district court found no violation on these grounds. Taylor does not include these claims in his appeal.

ments from the Bloomington Police Department in exchange for providing information about Taylor's case and others. According to Taylor, these omissions created "a false and misleading impression of CS 241's credibility for the state court judge's consideration of probable cause." Second, Taylor took issue with Detective Atteberry's description of CS 241, a documented informant with the Bloomington Police Department, as a "concerned citizen." Lastly, Taylor complained that the phone call that CS 241 placed to Taylor to confirm the plants' continued presence at his home was unrecorded and not heard directly by Detective Atteberry. After a preliminary review of Taylor's motion to suppress, the district court determined that a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) was necessary to inquire into three issues concerning the warrant affidavit: (1) Detective Atteberry's use of the term "concerned citizen" to describe CS 241, (2) the detective's statement that CS 241 "has been and continues to be considered reliable," and (3) the telephone call placed by CS 241 to Taylor about the marijuana plants.[2]

## B.  The *Franks* Hearing

Detective Atteberry, the affiant of the search warrant complaint, was the only witness to testify at the *Franks* hearing. There, he stated that when he first met with CS 241 about Taylor's case, he knew CS 241 was a docu-

---

[2] In *Franks*, the Supreme Court held that the Fourth Amendment requires that a hearing be conducted "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause . . . ." 438 U.S. at 155-56.

mented informant for the Bloomington Police Department. Detective Atteberry explained that he had described CS 241 as a "concerned citizen" in a report attached to the warrant affidavit because it was his department's practice to refer to a confidential source as a "concerned citizen" in first interview reports to hide the source's identity. The detective then stated that he did not intend to influence the judge issuing the search warrant by his use of the phrase "concerned citizen" and that he did not use the reference in the actual warrant affidavit.

Detective Atteberry also explained his reasons for calling CS 241 reliable by detailing CS 241's involvement in past police investigations. Specifically, in 1998, when CS 241 began working with the Bloomington Police Department, his participation in an investigation led to eight arrests and convictions in a cannabis trafficking scheme; in 2003, CS 241 helped in a marijuana sales case that led to one guilty plea and two pending matters; and in 2004, CS 241 assisted in a cocaine investigation which led to an eight-year prison term for the defendant in that case. When asked by Taylor's defense counsel why he did not include this information in the search warrant affidavit, Detective Atteberry responded that he had never included an informant's track record in an interview report. Detective Atteberry then testified that he personally ascertained CS 241's reliability by corroborating the informant's statements about Taylor. The detective confirmed that Taylor resided at the address by reviewing the water and tax bills for the property and Taylor's prior arrest records. Detective Atteberry also stated that he drove by the property and observed the wooden fence, boat, and tarp described by CS 241.

Finally, Detective Atteberry testified that he had CS 241 place a phone call to Taylor to confirm that the plants were still at the property. He explained that he did not record the phone conversation because he believed to do so

would have been against state law. He then testified that he heard the informant's side of the conversation and could hear that the informant was talking to a male. Once the conversation ended, according to Atteberry, the informant told him that Taylor stated the plants were still located at his home.

At the conclusion of the *Franks* hearing, the district court denied Taylor's motion to suppress. In doing so, the court acknowledged that Detective Atteberry erred in referring to the informant as a "concerned citizen" and admonished the Bloomington Police Department to stop using the term altogether in future affidavits. The court found, however, that the detective did not use the misnomer in an attempt to "mislead" the issuing judge and that reading the affidavit in its totality would not leave the impression that a "concerned citizen" from the community was providing the information to the detective. The court also found the warrant affidavit's statement that CS 241 "has been used on multiple investigations in the past by the Bloomington Police Department Vice Unit and has been and continues to be considered reliable" to be lacking in detail and conclusory. However, the court speculated that if the issuing judge had heard Detective Atteberry's testimony about CS 241's assistance in past investigations "it would have made arguably an ironclad application as opposed to pointing away from probable cause, which certainly could sometimes be the case." The court also thought the case presented an "unusual amount of corroboration" further buttressing the probable cause determination. Lastly, the court did not find Detective Atteberry's failure to listen in on the informant's phone conversation with Taylor to be "fatal to the situation."

## C. Taylor's Trial and Post-Trial Motions

Taylor's trial commenced on March 7, 2005. The government's case-in-chief included testimony by Detectives

Atteberry and Bays regarding the discovery of the marijuana plants and their methodology for counting them: Detective Bays found the plants in Taylor's yard located next to a privacy fence, surrounded by boards and other debris, and enclosed by a wrought iron fence. Within the enclosure, the plants were growing in multiple styrofoam cups filled with soil. The cups were placed in four large plastic flats. Without removing the plants from the flats, Detective Bays transported them from Taylor's home to the Bloomington Police Department to be counted. There, Detective Bays, Atteberry and a third detective, Tim McCoy, divided up the four flats between them and counted their respective share of the plants. The detectives counted the plants by pulling the stalks from the styrofoam containers and counting each stalk that had roots and leaves as a plant. Detective Bays then added the detectives' individual counts together for a total of 1417 plants, which he recorded in the police report.[3] The detectives later destroyed their notes of their individual count of the plants and the tabulation of the counts; they also destroyed the styrofoam cups in which the plants were found. Detective McCoy did not testify. Neither Detective Atteberry nor Detective Bays testified as to the number of plants that he had individually counted. Taylor's counsel cross-examined both detectives and made no hearsay objections concerning the number of plants counted.

Detective Bays also testified regarding a video recording that he had taken of the plants as they were growing in Taylor's yard and after they were transported to the police station, which was played for the jury during his testimony. The still photo images that Bays made from the video were also admitted into evidence. In addition, the

---

[3] The police report was not offered or admitted as evidence.

jury was able to view the actual marijuana plants that were seized from Taylor's backyard; however, they were not in their original form. Rather, the plants were displayed with their leaves separated from their stalks.

In presenting his defense, Taylor testified and denied knowingly manufacturing or possessing with the intent to manufacture more than 1000 marijuana plants. He also presented witnesses who had visited his home in the days leading up to the execution of the search warrant who said they did not observe or detect anything illegal or unusual in his driveway or near his fence.

On March 9, 2005, the jury found Taylor guilty of manufacturing with the intent to manufacture marijuana. The jury also completed a form to indicate its special finding of the number of plants for which Taylor was responsible. The form listed the following options:

___    1000 or more marijuana plants

___    100 or more but less than 1000 marijuana plants

___    50 or more but less than 100 marijuana plants

___    less than 50 marijuana plants

The jury selected the first option.

Following the entry of the jury's verdict, Taylor filed a motion for a new trial, or alternatively, to vacate the jury's special finding that he was responsible for 1000 or more marijuana plants. In the motion, Taylor claimed that the jury's finding was based solely on the testimony from Detectives Atteberry and Bays concerning the total number of the plants, which was based on inadmissable hearsay. Taylor argued that the admission of this testimony was a violation of his rights guaranteed by the Sixth Amendment's Confrontation Clause and constituted plain error. Taylor's motion also argued that the government's evidence was legally insufficient to prove

that Taylor was responsible for 1000 or more marijuana plants. After hearing arguments regarding Taylor's motion and reviewing the evidence of the marijuana plants submitted to the jury, the court denied Taylor's motion for a new trial.

### D. Taylor's Sentence

Taylor's Sentencing Guidelines range was based on a criminal history category of I and a base offense level of 26,[4] subject to two separate 2-point adjustments for a total offense level of 30.[5] The resulting Guidelines range was 97 to 121 months. However, because the jury found that Taylor was responsible for more than 1000 marijuana plants, Taylor was subject to the statutory mandatory minimum of 120 months of imprisonment. *See* 21 U.S.C. § 841(b)(1)(A)(vii). The district court sentenced Taylor to a term of 120 months. Taylor then filed this appeal challenging the court's denials of his motion to suppress and motion to vacate the jury's special finding. He requests that either his conviction be reversed or that his sentence be vacated and his case remanded for resentencing.

---

[4] The offense level of 26 resulted from a drug quantity of "at least 100 KG but less than 400 KG of Marihuana." *See* U.S. SENTENCING GUIDELINES MANUAL § 2.D1.1(c) (2004) ("Guidelines"). Per the Guidelines, each marijuana plant equals 100 grams of marijuana. The reported 1417 plants confiscated from Taylor's home equaled 142 kilograms of marijuana.

[5] Due to the district court's finding that Taylor committed perjury during the trial, Taylor received a two-point adjustment for obstruction of justice under § 3C1.1 of the Guidelines. Taylor received a second two-point adjustment for possession of a firearm under § 2D1.1(b)(1) for the loaded handgun that was confiscated from his home during the search.

## II. ANALYSIS

### A. Taylor's Motion to Suppress

We will declare a search warrant invalid and exclude the fruits of the search if the defendant can show by a preponderance of the evidence that: (1) the search warrant affiant committed perjury or acted with reckless disregard by including false statements in the warrant affidavit, and (2) upon the exclusion of those false statements from the search warrant (and inclusion of any omitted material facts) the remaining information is insufficient to establish probable cause. *See Franks*, 438 U.S. at 155-56; *United States v. Pace*, 898 F.2d 1218, 1232-33 (7th Cir. 1990). While we review the district court's denial of a defendant's motion to suppress for clear error, *United States v. White*, 416 F.3d 634, 637 (7th Cir. 2005), we review de novo the legal conclusions reached by the court in determining the existence of probable cause, *United States v. Lawshea*, 461 F.3d 857, 859 (7th Cir. 2006).

When an informant, such as CS 241, provides the facts and circumstances used to support a finding of probable cause, we determine the legitimacy of the probable cause finding by assessing the informant's "reliability, veracity and basis of knowledge." *United States v. Olson*, 408 F.3d 366, 370 (7th Cir. 2005). Our inquiry considers whether the informant "(1) had firsthand knowledge; (2) provided sufficient details; (3) relayed information which was subsequently corroborated; and (4) testified at a probable cause hearing." *Id.*

With respect to the first factor, Detective Atteberry's warrant affidavit relates that CS 241 "had been present at [Taylor's] residence on numerous occasions when illegal cannabis sativa plants were present." In addition, the warrant states that CS 241 had last seen the plants on May 20, 2004, four days before the warrant was issued. CS

241's first-hand observation of the marijuana plants at Taylor's home, which occurred shortly before the execution of the warrant, supports a finding that his information was reliable. *See United States v. Lloyd*, 71 F.3d 1256, 1263 (7th Cir. 1995) (recognizing that an informant's first-hand observations support a finding of reliability).

Concerning the amount of detail provided by the informant, the warrant recounts specifics relayed by CS 241 to Detective Atteberry about Taylor and his marijuana-growing operation. In the interview, CS 241 provided Taylor's full name, weight, height, and telephone number, and described the address and color of Taylor's home as well as the type of car he drove. CS 241 also told Detective Atteberry that during the past fifteen years Taylor had grown 150 to 200 plants each year and that he dried, packaged and sold the plants, yielding an annual cash value of $500,000. Moreover, CS 241's information about Taylor's growing activity was current. Four days before Detective Atteberry obtained the search warrant, CS 241 reported that Taylor was growing 160 plants which were located on his property underneath a tarp next to his boat near the six-foot tall fence; that the plants had grown to four feet in height; and that Taylor routinely removed the tarp each morning to expose the plants to sunlight and air. The considerable detail supplied by CS 241 about Taylor and his marijuana growing operation bolsters the informant's credibility.

Third, the veracity of the statements CS 241 made to Detective Atteberry is further underscored by the detective's ability to corroborate the majority of the informant's story. The warrant itself states that Atteberry, during his surveillance of the property, observed a man matching CS 241's description of Taylor exit a vehicle and walk toward the front of the house. At the *Franks* hearing, Detective Atteberry testified that he confirmed that Taylor resided at the address given by CS 241 by looking at the

water and tax bills for the property. Detective Atteberry also corroborated CS 241's story about the plants growing on the property by having the informant place a call to Taylor and confirm that the plants were still there on the day the warrant was issued.[6] The corroboration of CS 241's statements through Atteberry's independent investigation proves that the informant was truthful.

Lastly, we consider whether CS 241 testified at the probable cause hearing. In this case, CS 241 did not testify before the issuing judge; however, as we pointed out in *United States v. Brack*, 188 F.3d 748 (7th Cir. 1999), of the four factors "[n]o one factor is dispositive[;] [e]ach is simply a relevant consideration in the totality of circumstances analysis. Therefore, a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability." *Id.* at 756 (citing *Illinois v. Gates*, 462 U.S. 213, 233 (1983)). At the *Franks* hearing, Detective Atteberry testified about CS 241's previous assistance to the Bloomington Police Department in drug investigations that ultimately led to multiple arrests and convictions. CS 241's track record of providing useful information to the authorities is strong evidence that the informant is a reliable source of information.

Therefore, Taylor's argument that Detective Atteberry misrepresented CS 241's credibility in omitting information concerning the informant's criminal background and receipt of cash payments from the Bloomington Police Department fails. Furthermore, an informant's criminality does not in itself establish unreliability. *See United States v. Garcia*, 66 F.3d 851, 856-57 (7th Cir.

---

[6] On appeal, Taylor does not further contend that Detective Atteberry's failure to listen in on the phone call placed by CS 241 to Taylor affected a finding of probable cause.

1995), *overruled on other grounds by United States v. Nance,* 236 F.3d 820 (7th Cir. 2000). Nor is an affidavit's omission of an informant's motive for providing information necessarily essential to a probable cause determination, especially when the informant is sufficiently reliable that probable cause would have been found even if the motive were included. *See Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 970 (7th Cir. 2003). Since Detective Atteberry corroborated CS 241's statements, even if the affidavit included information regarding CS 241's criminal background and payment history, this information would not have detracted from a finding of probable cause.

Taylor next takes issue with Detective Atteberry's use of the descriptor "concerned citizen" to refer to CS 241 in the affidavit. Considering that the phrase "concerned citizen" appears only once and in an attachment to the warrant affidavit, and CS 241 is first identified in the body of the affidavit as a "confidential informant/source," it is unlikely that Detective Atteberry's use of the phrase unduly misled the judge's probable cause determination, especially in light of the corroborated information regarding Taylor's illegal activity that appears throughout the affidavit.

CS 241's reliability as an informant has been convincingly demonstrated through the informant's first-hand observation of Taylor's illegal activity, detailed statements to Detective Atteberry that the detective was able to later corroborate, and past involvement with the police in numerous investigations that resulted in arrests and convictions of the targeted suspects. Because we find that the search warrant was supported by probable cause, the district court's denial of Taylor's motion to suppress the evidence of the marijuana plants was proper and is hereby affirmed.

**B. Taylor's Motion to Vacate the Jury's Special Finding**

After a jury found Taylor guilty of the charges in the indictment, he moved for an order granting him a new trial, or in the alternative, vacating the jury's special finding that he manufactured or possessed with the intent to manufacture more than 1000 marijuana plants. The district court denied both of Taylor's requests for relief. On appeal, Taylor maintains that the jury's special finding should be vacated because it was (1) based on inadmissible hearsay in violation of his Sixth Amendment right to confront witnesses against him, and (2) unsupported by the evidence. Taylor requests that this court either reverse his conviction or vacate his sentence and remand his case for resentencing.

Taylor points out that when Detectives Atteberry and Bays testified that a total of 1417 marijuana plants were counted, neither detective testified to his individual count of his share of the plants, and the third detective who participated in the count, McCoy, did not testify at all. Taylor contends that the total number of plants testified to by Atteberry and Bays was based upon inadmissible hearsay—McCoy's out-of-court statements regarding his count of his portion of the plants. According to Taylor, the district court erred in admitting this testimony and in doing so, violated his right to be confronted with the witnesses against him as guaranteed by the Sixth Amendment to the Constitution.

Taylor's counsel, however, failed to object to the district court's admission of this testimony at trial, and, instead, raised this issue for the first time in his motion for a new trial. Because Taylor did not assert a timely objection, he forfeited his right to assign error to the district court's admission of the testimony on appeal; therefore, our review is for plain error. *See United States v. Ross*, 77 F.3d

1525, 1538 (7th Cir. 1996). To establish that the district court committed plain error, Taylor must demonstrate that "(1) there was error; (2) the error was plain; and (3) the error affected [his] substantial rights." *Id.* (citing *United States v. Olano*, 507 U.S. 725, 731 (1993)). If Taylor can make such a showing, we have discretion to take remedial measures if the forfeited error "seriously affects the fairness, integrity or public reputation of judicial proceedings," or, in other words, causes "a miscarriage of justice." *See United States v. Stewart*, 411 F.3d 825, 829 (7th Cir. 2005) (internal citations omitted).

It is clear that error was committed at Taylor's trial when the district court allowed Detectives Atteberry and Bays to testify regarding the total number of plants counted. The detectives' testimony on this particular issue was based on inadmissible hearsay—Detective McCoy's individual count of his share of the plants. Neither Detective Atteberry or Bays counted 1417 plants alone. The testimony of Detectives Atteberry and Bays as to the total number of plants was predicated on McCoy's count; however, McCoy did not testify at trial. The government made no showing that McCoy was unavailable to testify, nor is there any indication that Taylor's counsel had a prior opportunity to cross-examine McCoy regarding his count of the plants. By allowing the testimony of Detectives Atteberry and Bays regarding the total number of plants counted, the district court effectively admitted McCoy's out-of-court statements to prove that Taylor was responsible for more than 1000 marijuana plants. Because the admission of McCoy's statements contravenes the protections of the Sixth Amendment's Confrontation Clause, the district court's error was plain. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004) (holding that the Confrontation Clause prohibits the admission of testimonial statements of a witness who did not appear at trial, unless the witness was unavailable to testify or the

defendant had a prior opportunity for cross-examination); *see also United States v. Gilbertson*, 435 F.3d 790, 795 (7th Cir. 2006) (concluding that "testimonial statements" are those "made following government official initiated ex parte examination or interrogation developed in anticipation of or in aid of criminal litigation").[7]

Next, we consider whether Taylor has shown that the district court's error affected his substantial rights. *See Olano*, 507 U.S. at 734. To accomplish this, Taylor must show that the error was prejudicial in that it affected the outcome of his trial. *See id.* Taylor points to the remarks made by the district court judge upon denying Taylor's motion for a new trial:

> Certainly I don't believe it's possible, standing on its own, to get from those pictures to the figure of over a thousand. There obviously were a large number of plants, hundreds. But whether it was over a thousand, I think it would not be possible to get to over a thousand without engaging in a certain amount of speculation. The pictures do

---

[7] The detectives' process of counting the marijuana plants was performed in the course of their criminal investigation of Taylor. Detective Atteberry testified at trial that after seizing the plants from Taylor's home, "[o]ur concern was the actual count of the evidence and the evidence was the plant itself." Trial Tr. at 25. Detective Bays likewise testified that his "focus was the number of plants," and that once he tallied the detectives' individual counts, he recorded the total number of plants in the police report. *Id.* at 48-50. It is therefore without question that the count of the plants was initiated by the government and carried out for purposes of future criminal prosecution of Taylor. Indeed, Taylor was indicted for knowingly manufacturing or possessing with the intent to manufacture more than 1000 marijuana plants, a charge that could not have been made without first counting the plants found in Taylor's home.

create a background for the testimony that occurred by one of the officers who did testify and who went on to explain, in addition to the pictures, what the methodology was that was used for the counting.

. . .

We do have the plants themselves that were shown to the jury, but I don't see how the jury could make much out of that, a bunch of dried-up plants. Certainly assigning numbers would not be something you could do from that. But we have the pictures. We have the physical evidence. We have the DVD of the plants growing. We have the officer testifying as to the methodology of the count and two of the three officers subject to cross-examination, Bays and Atteberry. McCoy did not testify.

*See* Tr. of Cont'd. Hr'g on Post-Trial Mots. at 17-18.

As the district court observes, without the testimony of the detectives concerning the total number of plants reportedly counted, the pictures and the physical evidence of the plants alone are not enough to establish that more than 1000 plants were found at Taylor's home. The admissible portions of the detectives' testimony also cannot support the jury's finding that Taylor was responsible for over 1000 plants. Detective Bays testified that he did not keep track of the number of styrofoam cups that housed the plants, although he estimated that there were between thirty to thirty-five cups in each of the four flats. Trial Tr. at 48. Detective Atteberry did not know the exact number of styrofoam cups holding the plants either; however, he testified that "there [were] well over a hundred of them." *Id.* at 24. Without the detectives' testimony that their individual counts totaled 1417, there is no support for the jury's conclusion that approximately 150 cups held over 1000 plants. However, that Taylor was responsible for only "100 or more but less than 1000

marijuana plants," is clearly supported by the photographic evidence of the plants. But because the jury's finding as to the quantity of drugs for which Taylor was responsible was impacted by the district court's admission of the hearsay testimony, the error affected Taylor's substantial rights.

Although Taylor has established that the district court committed plain error that affected his substantial rights, we only have discretion to take remedial measures when the forfeited error causes "a miscarriage of justice." *See Stewart*, 411 F.3d at 829. An error can be found to have such an effect "independent of the defendant's innocence." *Olano*, 507 U.S. at 736. The jury's special finding that Taylor manufactured or possessed with the intent to manufacture more than 1000 marijuana plants subjected Taylor to a mandatory minimum sentence of 120 months under 21 U.S.C. § 841(b)(1)(A)(vii). The district court subsequently committed Taylor to a term of 120 months of imprisonment. As we explained above, after the detectives' hearsay testimony is excluded, the pictures and physical evidence of the plants alone do not support the jury's special finding that there were over 1000 marijuana plants. Because Taylor's sentence is directly attributable to the jury's finding, to allow it to stand would be a miscarriage of justice. *See United States v. Paladino*, 401 F.3d 471, 481 (7th Cir. 2005).

As a result, we conclude that there is insufficient competent evidence in the record to support the jury's special finding that Taylor was responsible for more than 1000 marijuana plants. Accordingly, we vacate the jury's special finding and Taylor's sentence of 120 months, and we remand this case to the district court for the imposition of a sentence consistent with this opinion.

## III.  CONCLUSION

The district court's denial of Taylor's motion to suppress is AFFIRMED. Taylor's sentence of 120 months is VACATED and this matter is REMANDED to the district court for resentencing.

A true Copy:

     Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*