**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 28, 2007
Decided March 30, 2007

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Nos. 06-1803 & 06-1817

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeals from the United States District Court for the Southern District of Indiana, Indianapolis Division |
| *v.* | No. 05 CR 119 |
| JASON W. BLACK and DANNYE T. MCINTOSH, *Defendants-Appellant*s. | David F. Hamilton, *Judge.* |

## O R D E R

Jason Black, Dannye McIntosh, and Irving Posada were charged with possessing marijuana with intent to distribute, 21 U.S.C. § 841(a)(1), and conspiring to possess marijuana with intent to distribute, *id.* §§ 846, 841(a)(1), after they accepted delivery of 464 kilograms of marijuana from an undercover agent. Posada pleaded guilty, but Black and McIntosh went to trial and were convicted on both counts. Black challenges his sentence on appeal, while McIntosh's appointed counsel moves to withdraw under *Anders v. California,* 386 U.S. 738 (1967). We affirm Black's sentence, allow appointed counsel for McIntosh to withdraw, and dismiss McIntosh's appeal.

## I.

In July 2005 Special Agent Oscar Hagelsieb infiltrated an organization that was smuggling marijuana from Mexico into the United States. He picked up a shipment of marijuana in El Paso, Texas, and was instructed to deliver it to Indianapolis, Indiana, where Hagelsieb made contact with Posada.

Hagelsieb and Posada went together to the location appointed for the delivery—a parking lot in an industrial park—but the first attempt to deliver the marijuana went awry. A truck pulled into the lot, ostensibly to pick up the shipment, but the truck sped away without the marijuana after one of its occupants told Posada, "There are too many cars; it's too hot."

Over the next several hours, Hagelsieb and Posada both spoke by telephone with the suppliers in Mexico and El Paso, and the parties scrambled to make alternate delivery arrangements. Finally, at around 12:15 a.m., Hagelsieb learned that Posada was going to return to the parking lot in the industrial park. Hagelsieb drove back to the lot and began throwing the marijuana, which was packed in boxes, off the truck. However, when the boxes hit the ground, several broke open at the corners, releasing a strong odor of marijuana, according to Hagelsieb.

At around 1:00 a.m, a pick-up truck carrying Posada and two other men—later identified as Black and McIntosh—drove into to the lot. The three men "feverishly" loaded the boxes onto their truck, under surveillance by authorities the entire time. Black, who was driving the pick-up truck, almost collided with a patrol car as he was leaving the parking lot, and then he ran a stop sign. The officer signaled for Black to pull over, but instead Black led the officer—later joined by at least three other patrol cars—on a high-speed chase, racing down city streets at speeds of 60 to 75 m.p.h., running several red lights, and turning corners so abruptly that several boxes of marijuana flew out of the back of the vehicle. Black apparently lost control of the truck and, as the truck skidded through a yard, both he and McIntosh jumped out and fled on foot. They were quickly apprehended and arrested, along with Posada who was pulled from the back seat of the truck.

Posada, Black, and McIntosh were charged with possessing marijuana with intent to distribute, 21 U.S.C. § 841(a)(1), and conspiring to possess marijuana with intent to distribute, *id*. §§ 846, 841(a)(1). Posada pleaded guilty to both counts and was sentenced to 46 months' imprisonment. Black and McIntosh went to trial and were convicted on both counts. Black was sentenced to 151 months' imprisonment, the top of his guidelines range. McIntosh's guidelines range was much higher than

Black's—360 months to life—because he was a career offender.   *See* U.S.S.G. § 4B1.1.  The district court sentenced him to 360 months.

## II.

### A.      Black

Black raises only one argument on appeal: that the district court should have deemed him a minor participant and reduced his total offense level by two levels because he was "only involved for less than one hour in one shipment in a conspiracy that was likely exponentially larger than this one transaction."  *See* U.S.S.G. § 3B1.2(b).  Black concedes that he failed to raise this issue before the district court, but we treat that omission as a forfeiture and review for plain error because nothing in the record suggests that he made a "knowing and intentional decision" to forgo the possibility of a § 3B1.2 reduction.  *United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005).

We conclude, however, that the district court did not plainly err by not granting Black the § 3B1.2 reduction.  As the proponent of the reduction, Black bears the burden of proving that he was "substantially less culpable than the average participant" in his offense.  U.S.S.G. § 3B1.2 cmt. nn.3(A), 5; *see also United States v. Rodriguez-Cardenas*, 362 F.3d 958, 959 (7th Cir. 2004).  Black was not held accountable for any quantities distributed by members of the overarching conspiracy, so we are less concerned with his culpability in relation to that enterprise than we are with his culpability as compared to McIntosh and Posada. There, Black helped load the shipment onto his truck (suggesting that he knew the shipment involved a substantial quantity of marijuana) and he attempted to evade the police, leading them on a dangerous chase.  These acts exacerbated his involvement in the offense beyond the point where he could reasonably be called a "minor participant," and therefore we find that the district court's failure to grant the reduction was not error, let alone plain error.  *See United States v. McKee*, 389 F.3d 697, 700 (7th Cir. 2004) (denying reduction where defendant's acts of assistance to conspiracy made him an "essential component" thereof).

### B.      McIntosh

McIntosh also filed a notice of appeal, but his appointed counsel now seeks to withdraw under *Anders v. California*, 386 U.S. 738 (1967), because she is unable to discern a nonfrivolous issue to pursue.  Counsel's supporting brief is facially adequate, and McIntosh has responded to our invitation under Circuit Rule 51(b) to comment on counsel's submission.  We limit our review to the potential issues

identified in counsel's brief and McIntosh's response. *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

Counsel first considers whether McIntosh could argue that the evidence adduced at trial was insufficient to support the jury's findings of guilt on the conspiracy and possession counts. McIntosh never moved for a judgment of acquittal, *see* Fed. R. Crim. P. 29, so we would review such a claim for plain error, reversing only if "the record is devoid of evidence pointing to guilt" and allowing the conviction to stand would result in a "manifest miscarriage of justice." *United States v. Carrillo*, 435 F.3d 767, 777 (7th Cir. 2006).

First, the evidence in the record is sufficient on the conspiracy count if it shows that McIntosh was aware that the goal of the conspiracy was to distribute marijuana and he acted to further that goal, *see United States v. Medina*, 430 F.3d 869, 882 (7th Cir. 2005), even if the evidence is entirely circumstantial, *see United States v. Brisk*, 171 F.3d 514, 526 (7th Cir. 1999). Here, the evidence showed that McIntosh called Black four times between 12:23 a.m. and 12:35 a.m., which was about twenty-five minutes before the three men attempted to pick up the marijuana. The jury could reasonably infer that McIntosh made these phone calls in order to recruit Black to use his pick-up truck to retrieve the marijuana. McIntosh then rode with Black and Posada to the location and proceeded to help load the boxes—some of which broke open prior to being loaded and all of which had a "strong marijuana odor"—suggesting that McIntosh knew that the boxes contained marijuana. This inference is further supported by the fact that McIntosh jumped out of the fleeing pick-up truck as it was still moving, evaded the police, and hid underneath a car that was parked nearby. It would, therefore, be frivolous for McIntosh to argue that the record is *devoid* of evidence that he knew that there was a conspiracy to distribute marijuana and that he acted to further that goal by recruiting a driver and loading the truck.

Second, the evidence is sufficient on the possession count if it shows that McIntosh possessed the marijuana with the intent to distribute it while knowing that it was a controlled substance. *See United States v. Orozco-Vasquez*, 469 F.3d 1101, 1106 (7th Cir. 2006). It would be frivolous to argue in the face of the evidence described above that McIntosh was unaware that the boxes contained marijuana or that he did not possess it. Moreover, the jury heard that the shipment weighed more than 1000 pounds and was worth between $700,000 and $1 million. The quantity and cost of the drugs amply support an inference that McIntosh's possession was with intent to distribute.

McIntosh, in his Rule 51(b) response, argues that the evidence described above established nothing more than his "mere presence" during the offense. The

mere presence doctrine forbids the government from asking ask a jury "to convict a defendant just because he was found in proximity to illegal activity," *United States v. Garcia*, 439 F.3d 363, 368 (7th Cir. 2006), but the doctrine applies only to a defendant who is present "and nothing more," *United States v. Starks*, 309 F.3d 1017, 1026 (7th Cir. 2002). Here, the evidence showed that McIntosh was an active participant—he recruited Black and loaded some of the boxes onto the truck—and thus it would be frivolous for McIntosh to try to argue that he was merely present during the offense.

McIntosh also challenges his conviction on two additional grounds, both of which are frivolous. First, he proposes to argue that the district court erroneously admitted hearsay testimony from Agents Hagelsieb and Lievers, both of whom testified regarding statements Posada made to them. McIntosh forfeited this issue when his counsel failed to object to the admission of this testimony at trial; therefore, we review for plain error. *See United States v. Taylor*, 471 F.3d 832, 841 (7th Cir. 2006). Thus McIntosh would have to show (among other things) that the admission of the testimony affected his substantial rights, *see id.*, and this he cannot do because none of the testimony to which he objects has anything to do with his involvement in the offense. Moreover, Posada is a coconspirator, and the statements he made to Hagelsieb while arranging delivery of the marijuana were made "during the course and in furtherance of the conspiracy"; such statements are not hearsay. Fed. R. Evid. 801(d)(2)(E).

Second, McIntosh raises a virtually unintelligible argument concerning a "flight instruction." Indeed, we disfavor flight instructions, which authorize the jury to draw an inference of guilt from the fact that a suspect fled from authorities, *see United States v. Rodriguez*, 53 F.3d 1439, 1451 (7th Cir. 1995); *United States v. Williams*, 33 F.3d 876, 879 (7th Cir. 1994), but exactly what McIntosh proposes to argue here is unclear. Neither party requested a flight instruction, and the district court did not deliver one. Any argument on this point would be frivolous.

Finally, counsel considers whether McIntosh could argue that his guidelines-range sentence of 360 months (almost triple what the advisory sentence would have been were he not a career offender, *see* U.S.S.G. § 4B1.1) is "greater than necessary" to serve the purposes of sentencing described in 18 U.S.C. § 3553(a). Counsel notes that the sentence is presumed reasonable. *See United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). The Supreme Court recently granted a writ of certiorari to consider whether according a presumption of reasonableness to a sentence within the guidelines range is consistent with *United States v. Booker*, 543 U.S. 220 (2005), *see United States v. Rita*, No. 05-4674, 2006 WL 1144508 (4th Cir. May 1, 2006), *cert. granted*, 127 S. Ct. 551 (U.S. Nov. 3, 2006) (No. 06-5754), but regardless of how

that question is ultimately answered, it would be frivolous for McIntosh to challenge the reasonableness of his sentence.

At sentencing, McIntosh admitted that he was a career offender, but he argued for leniency because coconspirators Posada and Black had received much lower sentences. The district court rejected this argument, commenting on McIntosh's extensive criminal history and noting that McIntosh was on supervised release after serving a long sentence for federal drug offenses when he committed the instant offense. *See United States v. McIntosh*, No. 96-CR-0130-02 (S.D. Ind. Sept. 9, 1997). The district court said that this criminal history accounted for any "disparity" between McIntosh's sentence and his coconspirators' sentences and then selected the lowest possible sentence within the guidelines' range. The district court considered the § 3553(a) factors and articulated its reasons for the sentence chosen; it would be frivolous to argue that the sentence it chose was unreasonable. *See United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005).

## III.

Therefore we affirm Black's sentence, grant the *Anders* motion filed by McIntosh's counsel, and dismiss McIntosh's appeal.