In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2201

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ERIC E. GARVEY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 10-CR-133—**William M. Conley**, *Chief Judge.*

ARGUED MAY 31, 2012—DECIDED AUGUST 8, 2012

Before MANION, KANNE, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* Eric Garvey was convicted of four counts of distributing methamphetamine. The government's evidence at trial included testimony from a crime lab analyst, John Nied, who testified that four plastic bags recovered from controlled buys at Garvey's apartment contained methamphetamine. Nied was not, however, the same analyst who actually conducted lab tests on the white substance found in the bags—that

analyst had left to take another job, and the government did not call him as a witness. Nied was a supervisor at the same lab and had peer reviewed the analyst's work, so he testified instead. Garvey did not object to Nied's testimony at trial. On appeal, Garvey argues that allowing Nied to testify about the test results violated his rights under the Confrontation Clause of the Sixth Amendment. Because Garvey cannot demonstrate that any alleged error affected his substantial rights, we affirm his conviction.

## I. BACKGROUND

In January 2008, Wisconsin law enforcement began working with Sherry Benjamin, a confidential informant. In exchange for leniency relating to a number of pending prosecutions, Benjamin tipped off police about the dealers who were selling her drugs. Later that year, she told officers that she could purchase methamphetamine from Garvey, an acquaintance of her brother. Law enforcement agents set up a total of four controlled buys for her to purchase methamphetamine from Garvey, each taking place one to three weeks apart.

Law enforcement agents conducted a similar set up for each of the four controlled buys. First, the agents had Benjamin call Garvey to arrange the purchase of four to five hundred dollars worth of methamphetamine, recording each conversation. The agents would then search Benjamin for contraband, place a recording device on her, and have her meet Garvey in his apartment to buy the drugs, while the agents conducted sur-

veillance from nearby. After each completed purchase, Benjamin would turn the drugs over to the agents, who would again search her for contraband. The agents would then place the drugs in a sealed bag, initialing the bag before sending it to a laboratory for testing.

Garvey was subsequently indicted on four counts of distributing a substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1). The government's evidence at trial included Benjamin's recorded conversations and phone calls with Garvey—describing their negotiations over the quantity and price of the drugs—as well as testimony from Benjamin and law enforcement agents about the four controlled buys. Additionally, the government introduced into evidence four exhibits containing a crystalline material recovered from the controlled buys, each exhibit corresponding to a different controlled buy. John Nied, a controlled-substance analyst and technical unit leader at the Wisconsin State Crime Laboratory, testified that the substance recovered from the buys contained methamphetamine.

But Nied did not perform any lab tests on the exhibits prior to testifying. The analyst who actually performed the tests was Andrew Schleis, and the government did not call him as a witness because he no longer worked at the lab. Instead, the government planned to have Nied testify in his place because Nied was a supervisor at the same lab and had peer reviewed Schleis's work. Prior to trial, the government gave notice that it intended to call Nied instead of Schleis, and that Nied would testify as to the results of Schleis's analysis and the methods

employed at the lab. Garvey's counsel made no objection to the substitution.

At trial, Nied first testified that it was common practice for experts in his field to rely on tests performed by other analysts in order to render an opinion. He then gave his opinion regarding the composition of the crystalline material contained in each of the government's four exhibits. Testifying about one of the exhibits, for example, Nied stated that "[a]fter reviewing [Schleis's] data, I conclude that crystalline material in this item contains methamphetamine." (Trial Tr. at 1-P-141.) Nied also stated the quantities of the methamphetamine contained in each exhibit, referring explicitly to Schleis's report when doing so. Testifying about the same exhibit, Nied read from the report and determined that "[t]he quantity that [Schleis] reported total was 2.592 grams." *Id.* Nied made similar statements regarding the presence of methamphetamine and the weight of the substance for each of the four exhibits. Again, Garvey did not object to the testimony.

Without presenting any evidence or calling a witness, Garvey rested his case. The jury found Garvey guilty on all four counts, and the district court sentenced him to forty-two months' imprisonment.

## II. ANALYSIS

On appeal, Garvey argues that allowing Nied to testify about the results of tests performed by Schleis violated his Sixth Amendment rights under the Confrontation

Clause. The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Under the Confrontation Clause, testimonial statements of witnesses absent from trial may be admitted only if the declarant is unavailable and the defendant had a prior opportunity to cross-examine. *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

Because Garvey made no objection to Nied's testimony at trial, we review only for plain error. *See United States v. Irby*, 558 F.3d 651, 655 (7th Cir. 2009). "Under the plain error standard, the party asserting the error must establish (1) that there was in fact an error; (2) that the error was plain; and (3) that the error affects substantial rights." *United States v. Halliday*, 672 F.3d 462, 467 (7th Cir. 2012). Even where plain error is found, a defendant is not entitled to relief; rather, "the decision to remedy the error is discretionary, and we should not exercise that discretion unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Sykes*, 614 F.3d 303, 312 (7th Cir. 2010) (internal quotation marks and brackets omitted) (*quoting United States v. Olano*, 507 U.S. 725, 732 (1993)). Meeting all prongs of this standard "is difficult, as it should be." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal quotation marks omitted).

Garvey argues that, despite the deferential standard of review, the district court committed an obvious error in allowing Nied to read portions of Schleis's report while testifying. Nied's testimony relied on Schleis's

report concerning: (1) the presence of methamphetamine in the four exhibits, and (2) the weight of the substance contained in the exhibits. At oral argument, the government essentially conceded the error in allowing Nied to read the weight of the four exhibits directly from Schleis's report, but argued that any such error was harmless because the weight of the drugs was not charged in the indictment or subject to a specific finding by the jury. With regard to the testimony concerning the presence of methamphetamine, the government relies heavily on our opinion in *United States v. Turner*, 591 F.3d 928 (7th Cir. 2010), *cert. granted and judgment vacated by*, No. 09-10231, 2012 WL 2470054 (U.S. June 29, 2012), to argue there was no error because Nied used Schleis's report to form his own independent opinion and the report was not introduced into evidence. *See* Appellee's Br. at 17 (stating that "[t]his Court previously confronted virtually the same issue" in *Turner*). Indeed, the facts of this case mirror those in *Turner* considerably.

In *Turner*, the government sought to have a lab analyst testify that a substance introduced into evidence contained cocaine base. 591 F.3d at 930. The government did not call the analyst who actually performed the test at trial—she was on maternity leave—and instead called a senior forensic chemist at the same lab who peer reviewed her work, over the defendant's objection. *Id.* Although the testifying senior analyst relied on the original analyst's lab report and notes in rendering his opinion, the report and notes were not introduced into evidence. *Id.* at 931. We found no Confrontation Clause violation, even though the original

analyst's summaries contained some testimonial statements, in part because they were never introduced into evidence. *Id.* at 933. The government draws heavy parallels to *Turner*, noting that Schleis's report likewise was not introduced into evidence.

But after oral argument, the Supreme Court vacated our decision in *Turner* and remanded that case for further consideration in light of the Court's decision in *Williams v. Illinois*, 132 S. Ct. 2221 (2012). Therefore, we cannot rely on *Turner* to resolve the present matter. In *Williams*, a majority of the Court found there was no violation of the Confrontation Clause where a forensic specialist testified that a DNA profile produced by an outside laboratory matched a DNA profile of the defendant taken from a blood sample and entered into a state police database. The Court, however, sharply divided over the reasoning, leaving "significant confusion in their wake." *Id.* at 2277 (Kagan, J., dissenting); *see also id.* at 2265 (Kagan, J., dissenting) (noting that "Five Justices specifically reject every aspect of [the plurality's] reasoning and every paragraph of its explication"). But we need not delve too deeply into the Court's decision in order to resolve the present issue because, even if Garvey can establish plain error, he cannot demonstrate that the error affected his substantial rights.

Plain error affects the substantial rights of a defendant when it is prejudicial, "which means that there must be a reasonable probability that the error affected the outcome of the trial." *United States v. Marcus*, 130 S. Ct. 2159, 2164 (2010); *see also United States v. McGee*, 612 F.3d

627, 631 (7th Cir. 2010) (defendant must establish "serious prejudice"). Garvey, moreover, bears the burden of persuasion with respect to showing prejudice. *See United States v. Baker*, 655 F.3d 677, 681 (7th Cir. 2011); *see also McGee*, 612 F.3d at 631 (noting that plain-error review is more confined than harmless-error review in part because defendant bears burden of persuasion).

Garvey cannot demonstrate that, absent Nied's testimony, the outcome of the trial probably would have been different. First, the government correctly notes that Nied's testimony regarding the weight of the substance contained in the exhibits was not essential to the jury's verdict. The indictment alleged only that Garvey knowingly "distributed a mixture or substance containing methamphetamine," and did not specify a quantity. Nor did the jury make any findings regarding the quantity of methamphetamine sold for sentencing purposes. Thus, this case is readily distinguishable from *United States v. Taylor,* 471 F.3d 832 (7th Cir. 2006), on which Garvey relies.

The defendant in *Taylor* was charged with possession with intent to manufacture more than 1,000 marijuana plants. *Id.* at 835. At trial, however, the government only called two of the three detectives that, together, had counted the 1,417 total marijuana plants in Taylor's home. *Id.* at 841. Because the testimony of the two detectives regarding the total number of plants was predicated on the out-of-court statements of the third detective regarding his specific count, we found

a violation of the Confrontation Clause. *Id.* Moreover, Taylor was able to demonstrate that his substantial rights were affected because the jury made a special finding that he possessed 1,000 or more marijuana plants, subjecting him to a mandatory minimum sentence of 120 months' imprisonment. *Id.* at 842-43. Unlike in *Taylor*, Garvey's jury made no special finding concerning the quantity of drugs. Nied's testimony describing the weight of the substance was therefore unnecessary for the jury to reach its verdict.

The jury, moreover, heard an abundance of other evidence establishing both that Garvey sold methamphetamine during the four controlled buys and the quantity sold in each transaction. Specifically, the government introduced into evidence taped conversations of Garvey commenting on the quality, price, and amount of methamphetamine sold during his negotiations with Benjamin and the ensuing controlled buys. Even without Nied's testimony, the government firmly established that Garvey sold Benjamin methamphetamine during each of the controlled buys.

In any event, Garvey cannot establish prejudice because the evidence at trial was straightforward and overwhelming, irrespective of Nied's testimony. *See Irby*, 558 F.3d at 656 (testimonial statements admitted in violation of Confrontation Clause, but no plain error because defendant's substantial rights not affected in light of overwhelming evidence of guilt). The evidence at trial included the tape-recorded negotiations and transactions between Garvey and Benjamin. Benjamin

was searched prior to each transaction, kept under surveillance during the purchase, and once again searched by agents after she turned the drugs over to law enforcement. Although the defense posited that Benjamin may have had the motive to falsely accuse Garvey (in order to curry police favor) and opportunity to do so (the defense thought Benjamin could have been carrying the drugs on her prior to the controlled buys, notwithstanding the police searches before each buy), the jury rejected this theory. And Nied's testimony would have no reason to affect the jury's decision in that regard one way or the other. In light of the essentially uncontroverted other evidence establishing the presence of methamphetamine, Garvey cannot demonstrate that any alleged error affected his substantial rights.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Garvey's conviction.