NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 5, 2014
Decided April 14, 2014

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 13-2705

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 12 CR 366 |
| SEAN T. WILEY, *Defendant-Appellant.* | James B. Zagel, *Judge.* |

**O R D E R**

Sean Wiley pleaded guilty to separate counts charging that he robbed one bank and attempted to rob another, *see* 18 U.S.C. § 2113(a), and the district court imposed concurrent 180-month sentences. The court explained that it was imposing a prison term sufficiently long to assure that, after subtractions for good time and presentence credit, Wiley would remain in prison until his "middle" fifties. At the time Wiley was three months shy of 47 and had been detained continuously after his arrest. On appeal he principally argues that the court chose 180 months, rather than a shorter term, after overstating the amount of presentence credit he would receive. Wiley did not say anything after the court pronounced and explained the 180-month sentence. Although the court did make a mistake when

estimating the amount of presentence credit, the error did not affect Wiley's substantial rights, and thus we affirm the judgment.

This appeal involves Wiley's third bank robbery and attempt at a fourth. He committed his first bank robbery in 1996 shortly before he turned 30. He served about six years in prison, and then in 2002, while on supervised release, he robbed another bank. He pleaded guilty, and the district court imposed 128 months' imprisonment plus three years' supervised release. The Bureau of Prisons transferred Wiley to a halfway house in Chicago in April 2012 to serve out the remainder of his 128-month sentence, and he was projected to be released in October of that year. But within two weeks of his arrival at the halfway house, Wiley struck again. First, he walked into a Citibank branch on May 7, showed a teller a bag containing an object resembling a bomb (the "bomb" actually was constructed from a detergent box, wires, and a bar of soap), and demanded that the teller give him the $100 and $50 bills from the vault. Before the money could be retrieved, Wiley fled. A week later, on May 14, he entered a Fifth Third Bank, declared, "This is a robbery," held his right hand on his waist, and warned an employee, "Don't be a hero." Wiley left with $1,180. He was arrested the next day and confessed to that robbery and also his attempt to rob the Citibank branch.

Because of his extensive criminal history, Wiley is a career offender under the sentencing guidelines. *See* U.S.S.G. § 4B1.1(a). Applying that provision, the district court calculated a total offense level of 29 (after subtracting three levels for accepting responsibility, *see id.* § 3E1.1) and a criminal history category of VI, yielding an imprisonment range of 151 to 188 months. Wiley had been in custody almost continuously since 1996. For that reason, his lawyer asserted, Wiley had felt desperate when placed in the halfway house because he did not believe he could get a job and keep himself afloat financially with his criminal history and lack of family support. But Wiley himself did not testify at the sentencing hearing on that point (or present any other evidence), and actually he had told the probation officer that the Bureau of Prisons gave him only a small "release gratuity," and thus he was "broke after two weeks, put between a rock and a hard place, jumped the gun, and did what I did."

The district court imposed a within-guidelines sentence of 180 months. The judge gave this explanation:

> [H]e's 46 years old, and I basically think he ought to be incarcerated until he's in his middle 50's. The reason I think this is partly he might possibly acquire some skills in prison, but more because I think he will have better restraint on his own conduct. To the extent that he's trying to reintegrate into society, I believe in his 50's he will present a less threatening appearance to people who

might possibly hire him for some job, and I think he will be a calmer and more balanced person as anybody in the courtroom who has gotten to mid 50's can tell you.

180 months custody in the Bureau of Prisons, it's 15 years. I think he's been in for about a year, a little more than a year, and if he behaves himself in prison it's another 2 years off. So he'll be in his mid-50s when he leaves.

Wiley and his lawyer said nothing in response to this explanation.

Four days later, however, counsel filed a "Motion to Correct Sentence," invoking Federal Rule of Criminal Procedure 35(a). He asserted that at sentencing the district court had made an "arithmetical or computational error" in selecting a sentence of 180 months. Counsel elaborated that the court "wanted the defendant to be incarcerated until he was in his mid-fifties, and in so doing the court stated that it was taking into consideration that … the defendant had already been in custody for two years." But in fact, counsel continued, Wiley had been in custody only 14 months, not two years (he was arrested on May 15, 2012, and sentenced on July 18, 2013). And of that 14 months, counsel added, Wiley would receive only seven months of presentence credit because the sentence he was serving when released to the halfway house did not expire until mid-December 2012. Counsel thus asked the court to reduce Wiley's prison term by 17 months from 180 months to 163. Counsel's factual premise about the court's mistake, however, was wrong: The judge actually said that Wiley had been in custody "for about a year, a little more than a year," rather than the two years that counsel asserted. The court did overestimate the amount of presentence credit. The court's error of "a year, a little more than a year," would have amounted to five to seven months more than the actual credit of seven months. So the accurate calculation of the court's error should have been twelve to fourteen months minus the correct presentence credit of seven months.

The district court conducted a hearing and denied Wiley's motion. The court concluded that it lacked jurisdiction to rule on the motion because, by the time of the hearing, more than 14 days had passed since sentencing. *See* FED. R. CRIM. P. 35(a) (requiring court to rule on motion within 14 days); *United States v. Wisch,* 275 F.3d 620, 626 (7th Cir. 2001) (discussing Rule 35(c), which was designated as Rule 35(a) in 2002 and initially carried seven-day limit until extended to 14 days in 2009). But even with  jurisdiction, the judge added, he would be "disinclined" to change Wiley's sentence because 180 months "fits within the standard by which I imposed the sentence."

On appeal Wiley principally argues that the district court selected his sentence based on misunderstandings about the presentence credit he would receive, and, consequently,

when he would be released. Fourteen months had passed since Wiley's arrest, but, contrary to the court's conclusion, only the last seven counted against the 180-month term because Wiley's sentence for the 2002 robbery had not expired until December 2012. Wiley contends that this miscalculation played a significant role in the court's choice of 180 months because the court intended that he be released in his middle fifties. He seeks resentencing based on the correct facts.

The parties agree that our review is for plain error. Under this standard Wiley must show (1) an error (2) that it is plain, i.e., clear or obvious, and (3) that affected his substantial rights. *See United States v. Halliday*, 672 F.3d 462, 467 (7th Cir. 2012); *United States v. Thornton*, 642 F.3d 599, 605 (7th Cir. 2011). If Wiley overcomes these hurdles, we may, in our discretion, fashion a remedy if the error impugns the fairness, integrity, or public reputation of judicial proceedings. *United States v. Caira*, 737 F.3d 455, 462 (7th Cir. 2013); *United States v. Garvey*, 688 F.3d 881, 884 (7th Cir. 2012).

The government does not quarrel with Wiley's contention that conditions one and two are met. The government's concession aside, the court's error that Wiley asserts is not so obvious. He claims that the error lies in the judge's expectation that a 180-month sentence would release him in his middle fifties. Though Wiley insists that a 180-month sentence could result in release only when he is in his later, rather than middle fifties, he and the judge may simply have different understandings about what years are encompassed by the term "middle." The court acknowledged that Wiley was 46 when he was sentenced on July 18, 2013 (actually he was close to 47 because his birthday is October 19, 1966). Under the district court's calculation, with 14 months of presentence credit (which is what the court mistakenly believed he had) and two years of credit for good behavior, Wiley would be released in May 2025, when he would be 58½ (180 months – 14 months – 24 months = 142 months from July 18, 2013). Reasonable minds could debate whether a person of that age is in his "mid" or "mid-to-late" or "late" fifties. And an error cannot be plain if it is "subtle, arcane, debatable, or factually complicated." *United States v. Caputo,* 978 F.2d 972, 975 (7th Cir. 1992).

Still, "plain" or not, Wiley's appeal falters on the third condition of plain-error analysis because he has not shown that the asserted error affected his substantial rights. "Plain error affects the substantial rights of the defendant if the error was prejudicial, meaning that the error affected the outcome of the district court proceedings." *United States v. Baker,* 655 F.3d 677, 681 (7th Cir. 2011). The higher burden is Wiley's: He must demonstrate that his sentence "probably would have been different without the error." *United States v. James,* 464 F.3d 699, 709 (7th Cir. 2006); *United States v. Colvin,* 353 F.3d 569, 577 (7th Cir. 2003). But Wiley has not shown that the district court probably would have acted differently. Indeed, the district judge said he would be "disinclined, even if I had the

jurisdiction" to subtract the requested time from Wiley's sentence because "180 months fits within the standard by which I imposed the sentence." And Wiley offers no reason why the district court might still be inclined to impose a different sentence despite the court's disclaimer. Thus, Wiley has not met his burden of showing prejudicial error.

Accordingly, we AFFIRM the judgment.