In the

# United States Court of Appeals
## For the Seventh Circuit

---

Nos. 05-4506 & 06-1840

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

GEORGE MOON and ANTHONY ALEXANDER,

*Defendants-Appellants.*

---

Appeals from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:04-CR-71—**Rudy Lozano**, *Judge.*

---

ARGUED SEPTEMBER 13, 2007—DECIDED JANUARY 3, 2008

---

Before EASTERBROOK, *Chief Judge*, and CUDAHY and
SYKES, *Circuit Judges.*

EASTERBROOK, *Chief Judge.* Anthony Alexander and
George Moon have been convicted of distributing co-
caine and of some ancillary crimes. See 21 U.S.C. §841.
Alexander received a sentence of life imprisonment and
Moon of 190 months. The principal question on appeal is
whether a chemist violated the Confrontation Clause of
the Sixth Amendment when testifying that the sub-
stance seized from defendants was cocaine.

James DeFrancesco, a chemist employed by the Drug
Enforcement Agency, testified that the substance was
cocaine. He based this conclusion on the output of

two machines: an infrared spectrometer and a gas chromatograph. DeFrancesco did not perform the tests himself; the lab work had been done by Ragnar Olson, a chemist who left federal employment three weeks before trial. Olson had just started at law school and did not want to interrupt his legal education. So DeFrancesco testified, using the instruments' output, a report that Olson had prepared, and Olson's lab notes (which persuaded DeFrancesco that Olson had prepared the samples and run the tests correctly). Defendants did not object to DeFrancesco's testimony, or the introduction into evidence of Olson's report, other than on the ground that the tested samples' chain of custody was faulty. On appeal, however, they abandon the chain-of-custody point and contend that using Olson's work in any way violates the Confrontation Clause. The lack of an objection means that appellate review is limited to plain error.

*Crawford v. Washington*, 541 U.S. 36 (2004), holds that the Confrontation Clause entitles defendants in criminal cases to block the use of testimonial statements by persons who are not available for cross-examination at trial. Phrasing *Crawford*'s rule as an entitlement, rather than an unconditional command to the court, is important. Hearsay usually is weaker than live testimony, and defendants may prefer the hearsay version rather than making an objection that would compel the prosecution to produce a stronger witness. If a confrontation-clause objection had been made and granted in this case, for example, the result would have been the appearance of Olson on the stand, and then defendants would have been worse off than they were with DeFrancesco—for defense counsel could undermine DeFrancesco's testimony by reminding the jury that he had not done any of the work and that flaws in Olson's procedures may have been omitted from the lab notes. That it may be to defendants' advantage to accept the hearsay version of evidence

makes it problematic to entertain a *Crawford* claim via the plain-error clause of Fed. R. Evid. 103(d). A defendant who sincerely wants live testimony should make the demand, so that the declarant can be produced. The lack of a demand for testimony by an available declarant leads to the conclusion that the appellate argument is strategic rather than sincere.

We need not pursue that subject, however, because there was no problem with DeFrancesco's testimony. He testified as an expert, not as a fact witness. When an expert testifies, "the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted." Fed. R. Evid. 703. So if the Confrontation Clause precludes admitting Olson's report, this does not spoil DeFrancesco's testimony. See *United States v. Henry*, 472 F.3d 910, 914 (D.C. Cir. 2007). (Litigants may insist that the data underlying an expert's testimony be admitted, see Fed. R. Evid. 705, but by offering the evidence themselves defendants would waive any objection under the Confrontation Clause.)

Because defendants failed to make the right objection, Olson's report was received in evidence. And some of his report is indeed testimonial in nature. The report has two kinds of information: the readings taken from the instruments, and Olson's conclusion that these readings mean that the tested substance was cocaine. The latter is testimonial as the Supreme Court used that word in *Crawford* and more recent decisions, such as *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266 (2006). *Davis* says that a statement is testimonial if it was made without an ongoing emergency, and "the primary purpose of the interrogation [or statement] is to establish or prove past events potentially relevant to later criminal prosecution." 126 S. Ct. at 2274 (footnote omitted). A chemist's assertion that "this substance was cocaine" meets the *Davis* definition.

DeFrancesco reached on the stand the same conclusion that appeared in Olson's report. Defendants do not say that Olson's evaluation could have played any role in the jury's deliberation. Instead they are concerned about the readings taken from the instruments, because those readings are the problem for the defense. Any competent chemist would infer from these data that the tested substance was cocaine. Yet the instruments' readouts are not "statements", so it does not matter whether they are "testimonial." That's the holding of *United States v. Washington*, 498 F.3d 225 (4th Cir. 2007).

A physician may order a blood test for a patient and infer from the levels of sugar and insulin that the patient has diabetes. The physician's diagnosis is testimonial, but the lab's raw results are not, because data are not "statements" in any useful sense. Nor is a machine a "witness against" anyone. If the readings are "statements" by a "witness against" the defendants, then the machine must be the declarant. Yet how could one cross-examine a gas chromatograph? Producing spectrographs, ovens, and centrifuges in court would serve no one's interests. That is one reason why Rule 703 provides that the expert's source materials need not be introduced or even admissible in evidence. The vital questions—was the lab work done properly? what do the readings mean?—can be put to the expert on the stand. The background data need not be presented to the jury.

Thus we agree with *Washington* that the Sixth Amendment does not demand that a chemist or other testifying expert have done the lab work himself. Our decision in *United States v. Ellis*, 460 F.3d 920 (7th Cir. 2006), is to much the same effect—though it does not involve expert analysis. A hospital conducted blood and urine tests that were introduced into evidence as the hospital's business records. See Fed. R. Evid. 803(6); see also Rule 803(4). Then the arresting officer testified that

the results demonstrated the presence of methamphetamine in Ellis's system. *Ellis* holds that the test results were not "testimonial" under *Crawford* and *Davis*. 460 F.3d at 923–24. We did not consider the possibility that the data are not "statements" in the first place. Thus *Washington* and *Ellis* reach the same result: the Confrontation Clause does not forbid the use of raw data produced by scientific instruments, though the interpretation *of* those data may be testimonial.

DeFrancesco was entitled to analyze the data that Olson had obtained. Olson's own conclusions based on the data should have been kept out of evidence (as doubtless they would have been, had defendants objected). Still, given DeFrancesco's live testimony and availability for cross-examination, Olson's inferences and conclusions were not harmful to the defendants.

Defendants raise many other issues, but the only one that requires discussion is whether the evidence supports the jury's verdict that Alexander and Moon conspired to distribute cocaine. They depict their transactions as those of commercial buyer and seller, rather than as a conspiracy, which means an agreement to commit a future crime. See *United States v. Lechuga*, 994 F.2d 346 (7th Cir. 1993) (en banc). Why this issue should arise at all is hard to understand. Both defendants were convicted of actually distributing cocaine. The penalty for conspiracy to distribute drugs is no greater than the penalty for a substantive offense and may be less. (Alexander was sentenced to life in prison for one of his substantive offenses, and to 120 months for another, to run concurrently with 120 months for the inchoate crime; Moon received 190 months, concurrent, for both substantive and inchoate offenses. Alexander's sentence is higher because of his extensive criminal history, use of a weapon, and obstruction of justice; none of those enhancements is contested.)

Adding a conspiracy charge does little but complicate the trial and appeal. Some prosecutors may believe that they need to charge conspiracy in order to take advantage of the co-conspirator exception to the hearsay rule, see Fed. R. Evid. 801(d)(2)(E), but that's a mistake. This rule of evidence depends on principles of agency, so it applies (if the evidence demonstrates agreement by a preponderance, see *United States v. Martinez de Ortiz*, 907 F.2d 629 (7th Cir. 1990) (en banc)) whether or not the indictment has a conspiracy count. See *United States v. Gil*, 602 F.2d 546, 549 (7th Cir. 1979). Only the $100 special assessment for the conspiracy conviction is at issue, and it is hard to imagine that the prosecutor charged, tried, and briefed appeals on this issue for less than $200 (one assessment per defendant). The value of judicial time devoted to this question greatly exceeds $200. But here we are, and after *Ray v. United States*, 481 U.S. 736 (1987), a court of appeals can't use the concurrent-sentence doctrine to bypass the issue.

A judge authorized a wiretap of Alexander's phone so that agents could track down the source of the drugs he was selling. (They had lots of evidence that Alexander was dealing in cocaine and marijuana.) Agents heard Alexander talk to Moon, and the familiarity with which they spoke implied that they had been doing business for some time. During one conversation Moon said: "what I intend to do is to give you enough to have four, five, or six meals if that's open for you and then when I come back the following to see you is that you and I need to schedule some time to have some lunch." An agent interpreted this for the jury as a promise to deliver between 4 and 6 kilograms of cocaine ("meals"), with some or all of the payment deferred (so that "schedule some time to have some lunch" meant "set up a time for you to pay me"). The district judge did not abuse his discretion in allowing the agent to testify as an expert about the meaning of elliptical phrases that are designed to make conversations sound

innocent to any third party who may be listening; Moon was not running a Meals-on-Wheels service.

When agents stopped a car that Moon was driving, they found 28 packages of cocaine, each holding a kilogram, and about $60,000 in cash, some $6,000 of which could be traced to payments that an informant had made to Alexander. Moon later called Alexander and tried to set up a time for Alexander to pay the rest of what he owed. A jury could conclude from this (and the references to "lunch") that Moon had been fronting cocaine to Alexander, who paid for some or all of each delivery only after reselling the inventory. The agents kept a watch on Alexander and Moon, who soon met; Alexander handed over $20,000. (A jury could find that the money came from Alexander, who was seen giving Moon something before driving away.)

Defendants acknowledge that they dealt in cocaine but say that buying and selling drugs differs from conspiracy. That's true enough in principle, as *Lechuga* holds, but often the same evidence that shows particular transactions may support an inference that the parties have agreed to commit future crimes together, and thus have conspired. See *United States v. Nubuor*, 274 F.3d 435 (7th Cir. 2001); *United States v. Hach*, 162 F.3d 937 (7th Cir. 1998). That's so here—not only because the recorded conversations imply that Alexander and Moon had been working together but also because a jury could infer that Moon extended credit to Alexander. Credit transactions make the parties co-venturers; Moon would profit only if Alexander committed a future crime (the sale of the fronted drugs) and paid him back. The jurors were told that they had to distinguish normal sales from conspiracy; defendants do not question the terms of those instructions. The evidence was sufficient to allow a reasonable jury to infer that Moon and Alexander were joint venturers.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*