In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3385

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

LARRY D. BILLIAN,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:08-CR-31—**William C. Lee**, *Judge*.

ARGUED MARCH 3, 2010—DECIDED APRIL 5, 2010

Before EASTERBROOK, *Chief Judge*, and MANION and EVANS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Larry Billian pleaded guilty to two marijuana offenses and to possessing a firearm in connection with those crimes. His conditional plea reserved the right to appeal from the district court's order denying his motion to suppress evidence seized from his home. The seizure was authorized by a warrant issued by a state judge. Billian contended that the affidavit Detective Teresa Smith had tendered in sup-

port of the application failed to establish probable cause and contained material falsehoods and omissions. The district court held a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), and found that, although Smith's affidavit was inaccurate in some respects, Billian "failed to demonstrate by a preponderance of the evidence that the affidavit contained deliberate lies or a reckless disregard for the truth." The judge concluded that the affidavit established probable cause—and that, even if it did not, suppression is inappropriate because Smith obtained a warrant in good faith. See *United States v. Leon*, 468 U.S. 897 (1984).

"[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's determination of probable cause should be paid great deference by reviewing courts". *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (citation and internal quotation marks omitted). See also *United States v. McIntire*, 516 F.3d 576 (7th Cir. 2008). Billian wants us to decide the probable-cause question without regard to the fact that both a state judge and a federal district judge have found probable cause. Appellate review, however, is deferential. After a federal district judge holds an evidentiary hearing and finds probable cause for the search, it would be almost inconceivable for a court of appeals to find probable cause so obviously lacking that the evidence must be suppressed. How could one say, as *Leon* requires for suppression, that any reasonable police officer must have known that the search warrant was deficient, when after an evidentiary hearing and ample time for reflection a federal judge found the warrant valid?

Billian's answer to this question is that Smith pulled the wool over the state judge's eyes. A warrant that rests on perjury, or false assertions made with reckless disregard of the truth, is not covered by the *Leon* principle. 468 U.S. at 923. One problem for this line of argument is that the federal judge concluded that the affidavit is sufficient even with some statements removed; *Franks* permits such a reconstruction. 438 U.S. at 171–72. Another problem is that the district judge found that Smith was neither deceitful nor reckless; errors in her affidavit were negligent, but negligence does not justify use of the exclusionary rule. See *Herring v. United States*, 129 S. Ct. 695 (2009). The district judge's findings are not clearly erroneous.

Smith told the state judge that she had received a tip that Billian was selling marijuana from his home and that he owned one black Cadillac and one white Cadillac. Smith and other officers checked this by verifying that Billian lived in the neighborhood where the tipster said he did. Smith drove past the house repeatedly and, though she did not see signs of drug sales, she did see a black Cadillac Escalade parked in the driveway frequently and once saw a white Cadillac. Police twice searched Billian's trash; each time they found some marijuana and packaging paraphernalia (such as the plastic bags used for distribution). Smith's affidavit related that nine months earlier police had stopped Octavian Reynolds for drug offenses while he was driving a white Cadillac registered to Billian; in that car, officers found a scale and "paperwork in the names of Reynolds and Billian." The affidavit added that during a stakeout

police had seen Billian leave "the residence of a known high-volume narcotics trafficker." It also observed that Billian had "a prior arrest for cocaine possession and . . . a 'handgun' alert." Finally, the affidavit included some information favorable to Billian: police took two drug-detection dogs to a storage locker that Billian had rented, and neither dog gave an "alert" to indicate that it had smelled unlawful drugs.

According to Billian, the search warrant rests entirely on an uncorroborated tip. "Entirely" because, in Billian's view, something is wrong with each aspect of the way police set about checking the tipster's report. Billian complains that Smith violated departmental procedure by taking five months after receiving the tip to write an intra-office memo memorializing the report (she testi-fied that this normally is done within a week, but that she left the information on a sticky note until other events reminded her of the need to follow up), and then misled the state judge by dating the tip to the intra-office memo rather than the tip's actual receipt. Billian observes that Smith saw a white Cadillac in Billian's driveway only once and did not write down its license plate number, so she could not learn who owned it. She often saw a black Cadillac, owned by Erin Billian, Larry Billian's wife. Larry contends that this means that some-thing must be fishy about any reports concerning a white Cadillac. He thinks that Smith withheld three pieces of information from the state judge: that she did not know who owned the white Cadillac seen in the driveway, that she did not see any suspicious activity when driving past his home, and that the tipster men-

tioned cocaine as well as marijuana, while the trash searches turned up only marijuana. Finally, Billian submits that the results of the trash searches should be ignored, first because the amounts of marijuana were small enough to represent personal use rather than distribution, and second because (according to Billian) the trash cans were next to his garage, rather than at the curb for pickup, when the police searched them, and this invasion of the home's curtilage was unreasonable.

The district judge thought this to be so much quibbling. The fourth amendment does not require police to follow their normal record-keeping procedures (or for that matter any state statute, see *Virginia v. Moore*, 553 U.S. 164 (2008)); it does not matter who owned the white Cadillac seen in the driveway, which may or may not have been the one Reynolds was driving (the material fact was that Reynolds was transporting drug paraphernalia plus papers linking him to Billian); that Billian threw away small quantities of marijuana shows that he had marijuana in the house, not that the discarded personal-use amounts were *all* the marijuana he possessed. Other tidbits, such as Billian's drug-related arrest, had not been questioned.

Billian's only substantial objection, as the district judge saw things, was the contention that officers violated the fourth amendment when searching his trash. If they did, then the contents of the trash cans could not count toward probable cause. Erin Billian testified without contradiction that the trash cans were next to the garage at 7 AM on February 6, 2008, and therefore could not

have been at the curb at 3 AM that day when the affidavit says they were searched the second time. ("Could not" because, Erin testified, there is not enough room in the driveway to get the cans around her car, so they can be moved only when her car is out of the driveway.) The district judge accepted this testimony but concluded that the first trash search adequately corroborated the tip. Billian contends on appeal that the first search was defective for the same reason as the second, but on that subject the testimony was conflicting. Although the district judge did not make a direct finding that the trash cans were at the curb when searched, he evidently believed Smith rather than Erin Billian about their location. Given the other support for the warrant, and the rule of *Leon*, there would be little point in a remand for explicit findings to that effect.

On to sentencing. Billian received 70 months' imprisonment for the drug offenses, to be followed by 60 months' imprisonment for the firearms offense, 18 U.S.C. §924(c). He contests the 70-month term because, he contends, the district judge should have held him accountable for only the 13 kilograms of marijuana found at his home. The judge calculated Billian's relevant conduct at 490 kilograms of marijuana after converting to a marijuana equivalent the $40,000 in cash seized in the house (a step that Billian no longer contests) and estimating the extent of Billian's drug-distribution business. Billian contends that the record does not show, by a preponderance of the evidence, that he had any such business. But the judge's finding was based on Smith's testimony at an evidentiary hearing that Billian had confessed to

conducting a substantial marijuana-distribution opera-tion. Billian testified at the hearing that he never said any such thing to Smith. The judge believed Smith rather than Billian. A challenge to the resolution of such a swearing contest has no prospect of success on appeal. See *Anderson v. Bessemer City*, 470 U.S. 564, 573–75 (1985).

No more need be said about the sentencing argument that Billian's counsel made, but a few words are in order about a potential argument that counsel overlooked. When converting the cash to a drug equivalent, the presentence report treated 1 pound as 2.2 kilograms. That's backward: 1 kilogram is 2.2 pounds. This error, which no one noticed, increased Billian's relevant conduct from 370 kilograms of marijuana to 490, and his offense level from 23 to 25. The presentence report calculated a Guidelines range of 70 to 87 months; the correct range was 57 to 71 months. If the district court thought that Billian deserved a sentence toward the bottom of the range, then this error may have added a year to his im-prisonment. But because 70 months is within the correct range—or the judge may have selected the 70-month term independent of the Guidelines—it may be that the computation would not affect the sentence.

One important element of plain-error review is whether the mistake had a substantial and prejudicial effect. See *United States v. Olano*, 507 U.S. 725, 734–35 (1993). It is hard to know whether this mistake was prejudicial, because it affects (or might affect) a discretionary deci-sion by the district judge. In other sentencing cases we have concluded that the best way to find out is a limited

remand, which permits the district judge to tell us whether discovery of the error would have led to a lower sentence. See *United States v. Taylor*, 520 F.3d 746 (7th Cir. 2008); *United States v. Paladino*, 401 F.3d 471, 481–85 (7th Cir. 2005). That is the best way to proceed here as well.

The judgment of conviction is affirmed. We order a limited remand under the *Taylor–Paladino* procedure so that the district judge can tell us whether the error in converting pounds to kilograms affected the exercise of discretion in sentencing. If the judge answers yes, we will remand for a full resentencing; if the judge answers no, we will affirm Billian's sentence.