BRISCOE, Chief Judge,
concurring:
I concur but write separately to outline why, in my view, there is no merit to Pablo’s claim that the admission of Snider’s testimony violated his confrontation rights. The majority generously assumes that Dick’s DNA report and Boyd’s serology report, neither of which were proffered or admitted at trial nor included in the record on appeal, contained testimonial statements. I would not make that assumption.
“The Sixth Amendment’s Confrontation Clause provides that, ‘[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.’ ” Crawford v. Washington, 541 U.S. 36, 42, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). “A witness’s testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination.” Melendez-Diaz v. Massachusetts, - U.S. -, -, 129 S.Ct. 2527, 2531, 174 L.Ed.2d 314 (2009).
The Supreme Court has “described the class of testimonial statements covered by the Confrontation Clause as follows,” id. at 2531:
Various formulations of this core class of testimonial statements exist: ex parte in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.
Crawford, 541 U.S. at 51-52, 124 S.Ct. 1354.
In Melendez-Diaz, the Court held that this “core class of testimonial statements” encompassed three “certificates of analysis” that were admitted against the defendant in that case. Those certificates “show[ed] the results of ... forensic analysis performed on ... substances” seized from the defendant and his codefendants. 129 S.Ct. at 2531. “The certificates were sworn to before a notary public by analysts at the State Laboratory Institute of the Massachusetts Department of Public Health, as required under Massachusetts law.” Id. The Court noted that “[t]he documents ..., while denominated by Massachusetts law ‘certificates,’ [we]re quite plainly affidavits: ‘declaration[s] of facts written down and sworn to by the declarant before an officer authorized to administer oaths.’ ” Id. at 2532 (quoting Black’s Law Dictionary 62 (8th ed. 2004)). The Court further concluded that “[tjhey [we]re incontrovertibly a solemn declaration or affirmation made for the purpose of establishing or proving some fact,” specifically “that the substance found in the possession of [defendant] Melendez-Diaz and his codefendants was, as the prosecution claimed, cocaine — the precise testimony the analysts would be expected to provide if called at trial.” Id. (internal quotation marks and citation omitted). In other words, the Court concluded, “[t]he ‘certificates’ [we]re functionally identical to live, in-court testimony, doing ‘precisely what a witness does on direct examination.’ ” Id. (quoting Davis v. Washington, 547 U.S. 813, 830, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)). Lastly, the Court noted that “under Massachusetts law the sole purpose of *1304 the affidavits was to provide ‘prima facie evidence of the composition, quality, and the net weight’ of the analyzed substance,” id. (italics in original; quoting Mass. Gen. Laws, ch. Ill, § 13), and thus “the analysts [presumably] were aware of the affidavits’ evidentiary purpose,” id. “In short,” the Court held, “the analysts’ affidavits were testimonial statements, and the analysts were ‘witnesses’ for purposes of the Sixth Amendment.” Id.
Pablo, relying on Melendez-Diaz, asserts that the DNA analysis report prepared by Dick was a “testimonial statement” and that reference to the results of the report at trial, combined with the unavailability of Dick as a witness, resulted in a violation of his Sixth Amendment rights. Pablo, however, is mistaken. To begin with, there is no indication in the record that Dick’s written report, which was not included in the record on appeal and thus is unavailable to us, was intended by Dick, her superiors, or the prosecution to be the functional equivalent of live, in-court testimony. In particular, there is no indication the report was sworn to by Dick before an officer authorized to administer oaths. Further, Snider testified that, under the laboratory’s protocols, reports were prepared in such a manner that they could be testified to by any criminalist from the laboratory. Thus, Dick’s report does not fall within the Supreme Court’s definition of “testimonial statements.” Instead, Dick’s report appears to be “in the nature of a business record,” United States v. De La Cruz, 514 F.3d 121, 133 (1st Cir.2008) (holding that autopsy reports are business records), and thus was not testimonial in nature, Crawford, 541 U.S. at 56, 124 S.Ct. 1354.
Moreover, unlike the situation in Melendez-Diaz, the contents of the document at issue were not presented by themselves as the functional equivalent of live testimony. Indeed, the report was not admitted as an exhibit at trial. Instead, the contents of the report were discussed by a live witness subject to cross-examination. Although Pablo complains that this witness, Snider, did not prepare the report, Snider testified at trial that the laboratory’s protocols required criminalists, including Dick, “to write a report as if somebody else [wa]s going to testify to it.” ROA, Vol. 3, Part 1 at 260. Snider further testified, and the district court expressly found, that the laboratory’s protocols for the handling and testing of the evidence, which were testified to in detail by Snider, were followed by Boyd and Dick. Snider also testified, based upon her review of Dick’s casework, that Dick’s method of note-taking was very similar to that utilized by Snider, and Snider opined that Dick generally “d[id] a very excellent job.” Id. at 281. Snider also, on cross-examination by both Pablo and Gordo, explained various aspects of Dick’s reports, including the procedures utilized in performing the DNA analysis and the statistical aspects of the report. Thus, in sum, Pablo was afforded the opportunity to cross-examine the witness who testified as to the results of the laboratory’s DNA testing, and he is wrong in suggesting that Snider “could not explain how the results were arrived at, whether the person who reached the conclusions was qualified to do so, or whether proper procedures were followed to avoid contaminating the evidence.” Aplt. Br. at 24.
Finally, and relatedly, both the Federal Rules of Evidence and our case law indicate that it was entirely proper for Snider to testify based on the contents of Dick’s report. Federal Rule of Evidence 703 permits an expert witness to form and then testify as to an opinion based on reports or data that are otherwise inadmissible under the Federal Rules of Evidence, provided the reports or data are “of a type reasonably relied upon by experts in the particular field in forming opinions or inferences *1305 upon the subject.” Under longstanding Tenth Circuit law applying Rule 703, “[i]t is ... firmly established that an expert may testify from another person’s notes,” particularly those of a lab technician. United States v. Davis, 40 F.3d 1069, 1075 (10th Cir.1994). In other words, as the Seventh Circuit recently explained, “ ‘the Sixth Amendment does not demand that a chemist or other testifying expert have done the lab work himself.’ ” United States v. Turner, 591 F.3d 928, 933 (7th Cir.2010) (quoting United States v. Moon, 512 F.3d 359, 362 (7th Cir.2008)).
For these reasons, I conclude there was no error on the part of the district court, let alone plain error, in admitting Snider’s testimony.[1]

. The same analysis and conclusions apply to the extent Pablo is challenging Snider’s testimony regarding the contents of Boyd’s serology report. Boyd's report, like Dick’s, was neither proffered or admitted at trial nor included in the record on appeal.