# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 12-1809

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MAURICE MAXWELL,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 11-CR-25-WMC-1—**William M. Conley**, *Chief Judge*.

ARGUED APRIL 19, 2013—DECIDED JULY 19, 2013

Before EASTERBROOK, *Chief Judge*, and POSNER and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Maurice Maxwell was charged with possession with intent to distribute crack cocaine. The analyst from the Wisconsin State Crime Laboratory who originally tested the substance seized from Maxwell retired before trial, so the government offered the testimony of his co-worker instead. The co-worker did not personally analyze the substance herself,

but concluded that it contained crack cocaine after re-viewing the data generated by the original analyst. Maxwell did not object to this testimony of the co-worker at trial, but now argues on appeal that it violated the Confrontation Clause of the Sixth Amendment. We reject Maxwell's argument because he has failed to show plain error in permitting a forensic analyst to rely on data gathered by a colleague when she was subject to cross-examination at trial. Maxwell also argues that the district court should have sentenced him under different statutory and Sentencing Guideline ranges under the Fair Sentencing Act of 2010. But because we cannot determine whether the district court would have given Maxwell the same sentence had it known that the Fair Sentencing Act applied, we issue a limited remand to the district court.

## I. BACKGROUND

On July 29, 2010, Maxwell was arrested after he sold 2.9 grams of crack cocaine, 2.8 grams of powder cocaine, and five ecstasy pills to a confidential informant. The arresting officer, Detective Jeff Wilson, searched Maxwell and found two straws and a bag hidden in his underwear. The bag contained an off-white substance, which Wilson weighed, "field-tested," and concluded was 13 grams of crack cocaine.

A federal grand jury indicted Maxwell on a single count of possessing with intent to distribute five or more grams of a mixture or substance containing cocaine base in violation of 21 U.S.C. § 841(a)(1). John Nied,

a forensic scientist in the Controlled Substances Unit at the Wisconsin State Crime Laboratory, analyzed the substance that Detective Wilson seized from Maxwell and memorialized his findings in a report that confirmed the presence of cocaine base (i.e., crack cocaine). Nied had retired by the time of Maxwell's trial, and so the government notified Maxwell that it intended to call Michelle Gee, another forensic scientist with the Wisconsin State Crime Laboratory, in Nied's place. Maxwell made no objection.

Maxwell fired all three of his count-appointed lawyers and proceeded to trial pro se (with the aid of standby counsel). At trial, Gee testified that the substance seized from Maxwell contained cocaine base. Gee explained that in reaching this conclusion, she did not perform the "primary analysis" of the substance, but rather reviewed the raw data generated from gas chromatography and mass spectrometry tests performed by Nied. Maxwell did not object to any of this testimony or cross-examine Gee about the nature of the substance. Instead, he maintained that the drugs he possessed were for his own use and not intended for distribution.

After the jury found Maxwell guilty, he moved for a judgment of acquittal, or in the alternative, a new trial. The district court denied the motion and sentenced Maxwell to twelve years' imprisonment. Maxwell now appeals his conviction and sentence.

## II. ANALYSIS

### A. No Confrontation Clause Violation

Maxwell's main argument on appeal is that the Sixth Amendment's Confrontation Clause prohibited Gee from testifying that the substance found on him contained cocaine base when Gee did not conduct the lab work herself. A defendant has the burden of raising any Confrontation Clause objection in the first instance at trial. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 327 (2009). Because Maxwell made no objection to Gee's testimony until his post-trial motion below, we review this constitutional claim for plain error. *See United States v. Garvey*, 688 F.3d 881, 884 (7th Cir. 2012); *United States v. Moon*, 512 F.3d 359, 361 (7th Cir. 2008).[1]

---

[1] Maxwell argues that plain error should not apply because the government has waived any forfeiture defense. According to Maxwell, the government lost its right to invoke plain error review on appeal because it failed to invoke plain error when it responded to his motion for judgment of acquittal before the district court. We have previously recognized that "a party can waive a waiver argument by failing to raise it," *United States v. Hassebrock*, 663 F.3d 906, 914 (7th Cir. 2011), but the cases to which Maxwell points involve the government's failure to argue for plain error in its brief on appeal. *See, e.g.*, *United States v. Blagojevich*, 612 F.3d 558, 560 (7th Cir. 2010); *United States v. Paredes*, 87 F.3d 921, 924 (7th Cir. 1996). That is not the situation here. Moreover, "we have also recognized that the waiver doctrine is designed for our protection as much as that of an opposing party, and therefore need not be

(continued...)

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." We have had several occasions in recent years to evaluate potential Confrontation Clause problems that arise when an expert witness from a crime lab testifies about the results of forensic testing performed by another analyst. *See United States v. Turner*, 709 F.3d 1187, 1190 (7th Cir. 2013); *Garvey*, 688 F.3d at 884-85; *Moon*, 512 F.3d at 361. We already know that the government may not introduce forensic laboratory reports or affidavits reporting the results of forensic tests and use them as substantive evidence against a defendant unless the analyst who prepared or certified the report is offered as a live witness subject to cross-examination. *See Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2710 (2011); *Melendez-Diaz*, 557 U.S. at 329. But, as we have explained before, "an expert who gives testimony about the nature of a suspected controlled substance may rely on information gathered and produced by an analyst who does not himself testify," *Turner*, 709 F.3d at 1190, as "the facts or data" on which the expert bases her opinion "need not be admissible in evidence in order for the [expert's] opinion or inference to be admitted." *Moon*, 512 F.3d at 361 (citing Fed. R. Evid. 703). And this makes sense because the raw data from a lab

---

[1] (...continued)

asserted by a party for us to invoke it." *Hassebrock*, 663 F.3d at 914 (internal quotation marks and citations omitted).

test are not "statements" in any way that violates the Confrontation Clause. *Id.* at 362.

What makes this case different (and relatively more straightforward) from those we have dealt with in the past is that Gee did not read from Nied's report while testifying (as in *Garvey*), she did not vouch for whether Nied followed standard testing procedures or state that she reached the same conclusion as Nied about the nature of the substance (as in *Turner*), and the government did not introduce Nied's report itself or any readings taken from the instruments he used (as in *Moon*). Maxwell argues that Nied's forensic analysis is testimonial, but Gee never said she relied on Nied's report or his interpretation of the data in reaching her own conclusion. Instead, Gee simply testified (1) about how evidence in the crime lab is typically tested when determining whether it contains a controlled substance, (2) that she had reviewed the data generated for the material in this case, and (3) that she reached an independent conclusion that the substance contained cocaine base after reviewing that data.

Maxwell urges us to find a Confrontation Clause problem with Gee's testimony particularly in light of *Williams v. Illinois*, 132 S. Ct. 2221 (2012)—a case the district court did not have the benefit of at trial. In *Williams*, a state crime lab sent vaginal swabs taken from a rape victim to Cellmark, a private laboratory, for DNA analysis. At trial, an independent forensic expert, who played no role in the Cellmark analysis, confirmed that "there was a computer match generated of the male DNA profile

found in semen from the vaginal swabs of [the victim] to a male DNA profile" produced by the state crime lab from a sample of the defendant's blood. *Id.* at 2236. A plurality of the Court found no Confrontation Clause problem with this testimony, but the Court's 4-1-4 division left no clear guidance about how exactly an expert must phrase its testimony about the results of testing performed by another analyst in order for the testimony to be admissible. *See id.* at 2270, 2277 (Kagan, J., dissenting); *see also Turner*, 709 F.3d at 1189 (explaining that "the divergent analyses and conclusions of the plurality and dissent sow confusion as to precisely what limitations the Confrontation Clause may impose when an expert witness testifies about the results of testing performed by another analyst, who herself is not called to testify"). There is little question that Gee's interpretation of Nied's data in this case was testimonial in nature—its sole purpose was to prove that the seized substance was cocaine base. But even after *Williams*, we have explained that "an appropriately credentialed individual may give expert testimony as to the significance of data produced by another analyst." *Turner*, 709 F.3d at 1190-91 (citing *Williams*, 132 S. Ct. at 2233-35). In other words, Maxwell was not deprived of his Sixth Amendment right simply by virtue of the fact that Gee relied on Nied's data in reaching her own conclusions, especially since she never mentioned what conclusions Nied reached about the substance. *See id.*

Perhaps more fundamentally, unlike the defendants in *Williams* or *Turner*, Maxwell never objected to Gee's testimony at trial and he never denied that the substance

at issue was, in fact, crack cocaine. We certainly understand the value in cross-examining the person who actually performed the forensic tests on the substance in question if the accuracy of those tests is doubted, for we surely recognize that these tests are not infallible. *See Williams*, 132 S. Ct. at 2275 (Kagan, J., dissenting); *Turner*, 709 F.3d at 1192; *United States v. Washington*, 498 F.3d 225, 235 (4th Cir. 2007) (Michael, J., dissenting). But Maxwell only cross-examined Gee on the weight—not the composition—of the drugs because he was focused solely on showing his lack of intent to distribute. There was no question at trial about the *type* of drugs being distributed. Moreover, the strategic decision to demand live testimony is the defendant's choice to make, and one that many defendants (including Maxwell) opt to forego— sometimes for good reasons. *See Melendez-Diaz*, 557 U.S. at 328 ("It is unlikely that defense counsel will insist on live testimony whose effect will be merely to highlight rather than cast doubt upon the forensic analysis."); *Moon*, 512 F.3d at 361 ("That it may be to defendants' advantage to accept the hearsay version of evidence makes it problematic to entertain a *Crawford* claim via the plain-error clause of Fed. R. Evid. 103(d). A defendant who sincerely wants live testimony should make the demand, so that the declarant can be produced. The lack of a demand for testimony by an available declarant leads to the conclusion that the appellate argument is strategic rather than sincere.").

So for all of these reasons, we conclude that Gee's testimony did not violate the Confrontation Clause. Because there was no error, the admission of the testi-

mony was not plainly erroneous. *See United States v. Olano*, 507 U.S. 725, 732-33 (1993).

### B. Remand Is Necessary Under the Fair Sentencing Act

Maxwell also argues that he is entitled to resentencing because the Fair Sentencing Act of 2010 (FSA) makes him subject to lower statutory and Sentencing Guidelines ranges. Maxwell did not ask the district court to apply the FSA below, so our review is for plain error. *United States v. Taylor*, 520 F.3d 746, 747 (7th Cir. 2008).

The FSA, which took effect on August 3, 2010, increased the threshold amounts of crack that trigger mandatory minimum penalties under 21 U.S.C. § 841(b)(1). However, at the time of Maxwell's sentencing in February 2012, this court had held that the FSA did not apply to defendants, like Maxwell, whose offense occurred before the FSA took effect. *See United States v. Fisher*, 635 F.3d 336, 340 (7th Cir. 2011). So using pre-FSA law, the district court sentenced Maxwell (who was convicted of possessing 13 grams of crack) under 21 U.S.C. § 841(b)(1)(B), which provided a statutory range of 5-40 years' imprisonment. Given his career offender status, his offense level was 34 under U.S.S.G. § 4B1.1(b) in light of the 40-year statutory maximum. Combining an offense level of 34 with a Category VI criminal history resulted in a Guidelines range of 262-327 months' imprisonment.

But in June 2012, the Supreme Court reversed *Fisher* in *Dorsey v. United States*, 132 S. Ct. 2321, 2335-36 (2012), and confirmed that the FSA's lower mandatory minimums

apply to all defendants sentenced after August 3, 2010. In light of *Dorsey*, both parties agree that Maxwell is subject to a lower statutory range of 0-20 years. *See* 21 U.S.C. § 841(b)(1)(C) (now applying to crack quantities less than 28 grams). This results in a significant difference in the advisory Guidelines range of 262-327 months (pre-FSA) versus 210-240 months (post-*Dorsey*). *See* U.S.S.G. § 4B1.1(b)(3) (setting offense level at 32 for career offenders when their statutory maximum is 20 years or more, but less than 25 years); § 5G1.1 (lowering upper end of Guidelines because of the 20 year maximum). Because the district court calculated Maxwell's range as 262-327 months, we agree that procedural error occurred at sentencing.

The government concedes that Maxwell is subject to a lower Guidelines range, but maintains that he has not established plain error because he has failed to prove that the district court would have imposed a lower sentence had it known the FSA applied. In other similar cases where we could not be certain whether the district court would imposed a different sentence, we have ordered a limited remand under the procedure outlined in *United States v. Paladino*, 401 F.3d 471, 483-84 (7th Cir. 2005) (explaining the procedure involves "retaining jurisdiction of the appeal, [while] order[ing] a limited remand to permit the sentencing judge to determine whether he would (if required to resentence) reimpose his original sentence"). *See, e.g., United States v. Billian*, 600 F.3d 791, 795 (7th Cir. 2010); *Taylor*, 520 F.3d at 748. We believe that is the appropriate procedure here as well because the district court gave no indica-

tion that it would have imposed the same sentence regardless of the FSA's application. In sentencing Maxwell to 144 months, the court noted that it "could have justified going to a much higher sentence," but also found "some justification for a sentence below the guideline range" and stated that it was "unwilling to give up on this defendant." While it is possible that Maxwell's sentence would have been the same even if the court had applied the FSA, there is also reason to think it would have been lower, so we order a limited *Paladino* remand so that the district court may inform us whether it wants to resentence the defendant. If the district court states that it would reimpose the original sentence, then we will affirm Maxwell's sentence if it is reasonable. *Paladino*, 401 F.3d at 484. If, instead, the district court states that it would have imposed a different sentence had it known the FSA applied, then we will vacate the original sentence and remand for resentencing. *Id*. This court will accordingly retain jurisdiction until it has received the district court's response.

### III. CONCLUSION

For these reasons, we REMAND the case to the district court in accordance with the procedure set forth above. The judgment of the district court is AFFIRMED in all other respects.