In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 22-2833

CHRISTOPHER ROALSON,

*Petitioner-Appellant,*

*v.*

JON NOBLE, Warden,

*Respondent-Appellee.*

_____

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:18-cv-01831-PP — **Pamela Pepper**, *Chief Judge.*

_____

ARGUED MAY 15, 2024 — DECIDED AUGUST 28, 2024

_____

Before BRENNAN, KIRSCH, and LEE, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Christopher Roalson is serving a life sentence for stabbing and bludgeoning a 93-year-old woman to death. At his trial, a DNA analyst testified about evidence left behind on the two knives and barstool used to commit the murder. The testifying analyst did not swab the items and develop the sample left on the weapons—another analyst performed that work but was unavailable at trial. Instead, the analyst who took the stand testified that Roalson

was a possible contributor after comparing the sample from the weapons to a sample of his DNA. Roalson was convicted and now collaterally challenges that conviction. He argues that the trial court denied his right to confront a witness by allowing the substitute analyst to testify. The district court denied his habeas petition, and he asks us to reverse that decision.

## I.

In 2009, Christopher Roalson and Austin Davis broke into the Radisson, Wisconsin home of a 93-year-old woman. Davis was in the kitchen looking for items to steal when Roalson emerged from the woman's bedroom holding a bloody knife. Roalson and Davis had each taken a knife from Davis's cousin's house, their last stop before the break-in. Wordlessly, Roalson grabbed Davis's knife from his hand, picked up a wooden kitchen stool, and went back into the bedroom. Davis heard the woman screaming from the kitchen. Then, he heard something break and saw Roalson running out of the bedroom. Roalson kicked down a screen door and ran from the house, and Davis followed. As the two fled, Roalson broke the silence. He said that he stabbed the woman "a bunch of times" and "broke the chair over her," that "he was Satan's son," and that the woman "would [have] been saved if God was here."

A few days later, Roalson told his friend Jacqueline Walczak that he stabbed a woman. According to Walczak, Roalson said he and Davis set out "to rob a lady," they broke into the house, the "lady … caught them," "he took a chair and he hit her and he hit her and he hit her," "he stabbed her and he stabbed her and he stabbed her and he stabbed her," "he said hail, Satan" while stabbing her, and "if he got away with it, he'd do it again." When Walczak heard that a woman

had been found murdered and the cause of death was not being disclosed, she contacted police and told them what Roalson had told her.

The state charged Roalson with burglary and first-degree intentional homicide. Davis pleaded guilty to second-degree intentional homicide in exchange for cooperating with law enforcement and testifying at Roalson's trial.

Several witnesses testified at Roalson's trial in Sawyer County, Wisconsin Circuit Court. Davis shared what he saw and what Roalson told him after the murder. Walczak described Roalson's confession to her. And Carly Leider, a DNA analyst at the Wisconsin State Crime Laboratory in Madison, also testified.

Leider's testimony is at issue here. Another analyst, Ryan Gajewski, had swabbed evidence collected from the scene, tested the DNA samples he recovered, and concluded that Roalson's DNA was a possible contributor to some of the samples, including the knives. But Gajewski was unavailable to testify at trial because he was employed elsewhere and was in Afghanistan. So Leider appeared at trial.

Leider testified that she looked at Gajewski's notes and was able "to reach [her] own conclusions based on developed profiles[,]" which she compared to "standards" (that is, a person's DNA sample) to identify potential contributors. She explained her analysis was just like that of a peer reviewer, who examines the principal analyst's work. But in the peer review process, the reviewer does not retest the sample because the initial swab generates "the best collection of that DNA."

During Leider's testimony, counsel for the state presented her with several pieces of evidence—in particular, the two

knives and the barstool—and asked if she was able "to reach an opinion regarding the profile that was developed … versus the standards that were … developed." Each time, she testified as to her own conclusions. For example, Leider said she reached a conclusion about the DNA collected from swabbing the handle and the blade of one of the knives. The DNA detected from the handle included four "possible contributors to this DNA mixture profile," including the victim, Roalson, and Davis. And the DNA detected from the blade included "a female DNA profile," of which the victim "was the source."

The jury found Roalson guilty, and he was sentenced to life in prison.

He appealed his state conviction, arguing the trial court violated his right to confront Gajewski by allowing Leider to testify instead. The Wisconsin Court of Appeals affirmed, applying a rule from the Wisconsin Supreme Court's decision in *State v. Luther Williams*, 644 N.W.2d 919 (Wis. 2002). Citing that case, the court explained the Confrontation Clause is not always violated when one analyst testifies to his own conclusions about samples tested by another analyst. When the testifying analyst can provide an independent evaluation of the initial report, the original analyst need not be called.

After the Wisconsin and United States Supreme Courts denied certiorari, Roalson began his collateral attacks on his conviction. The state trial court denied his challenge without a hearing, and the Wisconsin Court of Appeals affirmed without addressing his Confrontation Clause claim.

Roalson then petitioned for habeas corpus in the Eastern District of Wisconsin. The court dismissed the petition. In just a few sentences, the court explained there is no federal law

"clearly holding" that the Confrontation Clause bars a testify-
ing analyst from testifying to "her own independent opinions
and conclusions regarding the DNA collected … ." Roalson
was free to confront Leider "about those opinions and conclu-
sions," so the decision of the Wisconsin Court of Appeals was
not unreasonable. Roalson appeals.

## II.

To grant a writ of habeas corpus, the adjudication of the
prisoner's claim must have resulted in a decision that was ei-
ther: (1) "contrary to, or involved an unreasonable application
of, clearly established Federal law, as determined by the
Supreme Court of the United States," or (2) "based on an un-
reasonable determination of the facts in light of the evidence
presented in the State court proceeding." 28 U.S.C.
§ 2254(d)(1) & (2). We defer to the state-court decision if it is
reasonable and review the district court's decision de novo.
*Gonzales v. Eplett*, 77 F.4th 585, 591 (7th Cir. 2023).

Under § 2254(d)(1), an application of federal law is unrea-
sonable if it is "so erroneous that 'there is no possibility fair-
minded jurists could disagree that the state court's decision
conflicts with [the Supreme] Court's precedents.'" *Nevada v.
Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington v.
Richter*, 562 U.S. 86, 102 (2011)). The federal law itself must be
"clearly established," 28 U.S.C. § 2254(d)(1), which "refers to
the holdings, as opposed to the dicta, of [the Supreme] Court's
decisions." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quota-
tions omitted); *Shirley v. Tegels*, 61 F.4th 542, 545 (7th Cir.
2023); *see also Bland v. Hardy*, 672 F.3d 445, 448 (7th Cir. 2012)
("Until the Supreme Court has made a right *concrete*, it has not
been 'clearly established.'"); *White v. Woodall*, 572 U.S. 415, 427
(2014) ("[C]ourts must reasonably apply the rules 'squarely

established' by [the Supreme] Court's holdings to the facts of each case." (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009))).

Our first step is to "determin[e] the relevant clearly established law." *Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004). Broadly speaking, the federal law at issue is the Confrontation Clause and the Supreme Court's interpretation of it. That Clause provides "the accused [in a criminal prosecution] shall enjoy the right … to be confronted with the witnesses against him." U.S. CONST. amend. VI. "Testimonial statements of witnesses absent from trial [may be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004). The state cannot introduce a report with testimonial conclusions into evidence without producing the analyst who prepared the report. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 308–09 (2009); *Bullcoming v. New Mexico*, 564 U.S. 647, 657–58 (2011). But it is less clear whether a state may allow an analyst to testify to his own conclusions about data another analyst collected.

In *Williams v. Illinois*, 567 U.S. 50 (2012), the Court's most recent and relevant Confrontation Clause decision,[1] the Court

---

[1] The Supreme Court recently decided another Confrontation Clause case that touches on the question here. *Smith v. Arizona*, 144 S. Ct. 1785 (2024). In that case, an analyst who did not testify collected some samples, tested them, and concluded that they tested positive for certain drugs. Another analyst reviewed this report to reach his own, independent conclusion about what the samples were, but also testified to the substance of the other analyst's report. *Id.* at 1795. The Court held that the testifying analyst testified to the truth of the other analyst's report and remanded for the

held that the Confrontation Clause was not violated when an analyst testified that swabs from a rape victim matched the defendant's DNA. *Id.* at 61–62, 71. Like Leider here, the analyst in *Williams* had not collected the swab, but reviewed the work of the analyst who did collect it. *Id.* at 61–62. From that review, she formed her own conclusion about whether the swab and the defendant's DNA matched. *See id.*

A fragmented Court decided *Williams*. Justice Alito wrote the plurality opinion joined by three other justices. He explained that the original analyst's report "was not to be considered for its truth but only for the distinctive and limited purpose of seeing whether it matched something else." 567 U.S. at 79 (quotations omitted). Justice Thomas, writing alone, agreed that the scheme did not violate the Confrontation Clause, but only as applied to Williams's case. The original report, he explained, "lacked the requisite formality and solemnity to be considered testimonial for purposes of the Confrontation Clause." *Id.* at 104 (Thomas, J., concurring) (quotations omitted). Justice Kagan, in dissent and joined by the remaining justices, saw no difference between introducing an unavailable analyst's report and allowing another analyst

---

state court to determine whether the report was testimonial. *Id.* at 1799–1802.

That Supreme Court case does not affect our analysis, as the Wisconsin Court of Appeals issued its decision in 2014. *See Greene v. Fisher*, 565 U.S. 34, 38 (2011) ("[Section] 2254(d)(1) requires federal courts to focu[s] on what a state court knew and did, and to measure state-court decisions against this Court's precedents as of the time the state court renders its decision." (quotations and emphasis omitted) (second alteration in original)).

to read that report and testify to her own conclusions. *Id.* at 125 (Kagan, J., dissenting).

We do not conclude that *Williams* clearly established a rule that helps us decide whether to grant Roalson's petition. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds[.]'" *Marks v. United States*, 430 U.S. 188, 193 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)). If "a concurrence that provides the fifth vote necessary to reach a majority does not provide a 'common denominator' for the judgment," the rule set out in *Marks* "does not help to resolve the ultimate question." *United States v. Heron*, 564 F.3d 879, 884 (7th Cir. 2009); *see id.* (listing cases).

Justice Thomas's concurrence and the plurality opinion do not share a "common denominator." *Id.* Justice Thomas focused on the formality of the original report, while the plurality opinion addressed how the report was presented at trial. It is true that Justice Thomas "share[s] the dissent's view of the plurality's flawed analysis." *Williams*, 567 U.S. at 104 (Thomas, J., concurring). But "under *Marks*, the positions of those Justices who *dissented* from the judgment are not counted in trying to discern a governing holding from divided opinions." *Gibson v. Am. Cyanamid Co.*, 760 F.3d 600, 620 (7th Cir. 2014). For one, *Marks* is expressly limited to the justices who "concurred in the judgments." 430 U.S. at 193 (quotations omitted); *see Gibson*, 760 F.3d at 620. Further, as this court explained in *Gibson*, "the dissenters have disagreed with the plurality and the concurrence on *how* the governing

standard applies to the facts and issues at hand []even if there is agreement" on some other issue. 760 F.3d at 620.

We are not the only court scratching its head at *Williams*. Other circuits have applied *Marks* to *Williams* and been left wanting for clarity, *United States v. Duron-Caldera*, 737 F.3d 988, 994 & n.4 (5th Cir. 2013); *Garlick v. Lee*, 1 F.4th 122, 133 (2d Cir. 2021), including in the habeas context, *Washington v. Griffin*, 876 F.3d 395, 409 (2d Cir. 2017).

*Marks* aside, neither this court nor the Supreme Court has suggested that *Williams* clearly established a rule. This court has applied *Williams* to reach a holding once. *United States v. Maxwell*, 724 F.3d 724, 727–28 (7th Cir. 2013). In that case, the defendant did not object to the Confrontation Clause issue and did not dispute the chemical makeup of the material tested. *Id.* at 727. The other two times this court has been presented with the opportunity to apply *Williams*, it has assumed a Confrontation Clause violation and focused instead on the harmless error question. *United States v. Turner*, 709 F.3d 1187, 1194 (7th Cir. 2013); *United States v. Garvey*, 688 F.3d 881, 885 (7th Cir. 2012).

The Supreme Court has also noted the lack of clarity surrounding *Williams*. Dissenting in *Williams*, Justice Kagan recognized the "uncertainty" of the opinions of the plurality and Justice Thomas and stated that she believes the earlier cases "continu[e] to govern, in every particular, the admission of forensic evidence." 567 U.S. at 141 (Kagan, J., dissenting). Indeed, the Court recognized the "muddle" *Williams* caused in lower courts just over a month after this case was argued, in *Smith*, 144 S. Ct. at 1794.

Recognizing *Williams*'s cloudiness, we are left with *Melendez-Diaz* and *Bullcoming* as the clearly established law governing Roalson's habeas appeal. These cases hold that a state cannot introduce a report with testimonial statements into evidence without producing the analyst who prepared the report. *Melendez-Diaz*, 557 U.S. at 308, 329; *Bullcoming*, 564 U.S. at 658.

Thus, the next question is whether the rule that the Wisconsin Court of Appeals applied is an unreasonable application of clearly established law. That rule, from *Luther Williams*, provides "one expert cannot act as a mere conduit for the opinion of another" and must instead "render[] her own expert opinion." *Luther Williams*, 644 N.W.2d at 926; *see State v. Deadwiller*, 834 N.W.2d 362, 377 (Wis. 2013) (applying rule). The testifying expert cannot be just anyone. The expert must be "highly qualified[,]" "familiar with the procedures at hand[,]" and must have "supervise[d] or review[ed] the work of the testing analyst." *Luther Williams*, 644 N.W.2d at 926.

That rule does not contradict *Melendez-Diaz* or *Bullcoming*.[2] To the contrary, it expressly prohibits a state from introducing an underlying report through testimony and requires that an

---

[2] The Wisconsin Supreme Court implicitly reached the same conclusion in *State v. Deadwiller* by holding the *Luther Williams* rule does not contradict *Williams*. In *Deadwiller*, an analyst testified at trial to his own conclusion that the defendant's DNA matched a profile another analyst collected from semen from sexual assault victims. 834 N.W.2d at 365. The jury found the defendant guilty. *Id.* at 368. The court in *Deadwiller* discussed *Williams* at length and concluded that the overlap among the facts of *Williams*, *Deadwiller*, and *Luther Williams* meant that the *Luther Williams* rule does not contradict *Williams*. *Deadwiller*, 834 N.W.2d at 375–77.

analyst form an independent opinion and testify to that independent opinion. *See Deadwiller*, 834 N.W.2d at 370 n.7.

So, as he must, Roalson argues that the state broke that rule and *did* introduce Gajewski's report through Leider's testimony. But this is not so. First, Roalson says Leider testified several times that she was "able to look at the … materials that were prepared by another analyst in the lab to reach [her] own conclusions." A peer reviewer would have to look at the notes to locate the profile and conduct her own comparison. What matters is whether the peer reviewer testified to the original reviewer's conclusions. Leider did not.

Second, Roalson argues Leider testified to Gajewski's process when asked: "[F]rom the review of the notes, does it indicate how the profiles were developed, meaning was there just one or were there … multiple?" Leider answered "yes" and explained, "[t]he knife was processed by swabbing the blade of the knife and the handle of the knife separately." This is not a case where one analyst testified that another analyst "had followed standard procedures in testing the substances and that he reached the same conclusion based on the resulting data that [the original analyst] had … ." *Turner*, 709 F.3d at 1191. Further, this case comes to us on habeas review, where we defer to a state court's reasonable application of federal law. The Wisconsin Court of Appeals reasonably concluded, based on Leider's testimony, that "[t]he opinions [she] reached on the basis of the materials she reviewed were her own." *State v. Roalson*, 855 N.W.2d 492 (unpublished table decision) (Wis. Ct. App. July 15, 2014). *Melendez-Diaz* and *Bullcoming* do not establish that this kind of testimonial corollary is problematic.

Even if Roalson were correct that the state court committed an error under § 2254(d) because the state introduced Gajewski's report for its truth via Leider's testimony, ample evidence supported his conviction, so any error did not have a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quotations omitted); *Brown v. Davenport*, 596 U.S. 118, 133 (2022). On habeas review, a reversible error must be harmful by more than a reasonable possibility. The court must find that the defendant was "actually prejudiced by the error." *Davis v. Ayala*, 576 U.S. 257, 268 (2015) (quotations omitted); *see Rhodes v. Dittmann*, 903 F.3d 646, 665–66 (7th Cir. 2018). When the error is a deprivation of an opportunity to cross-examine, this court considers several factors:

> [T]he importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Jones v. Basinger*, 635 F.3d 1030, 1052 (7th Cir. 2011) (quotations omitted); *see Rhodes*, 903 F.3d at 666.

These factors favor the state. Leider's testimony was not the most important evidence for the state. Far more impactful was Davis's testimony—which placed Roalson at the scene and provided Roalson's statements in the moments following the murder—and Walczak's testimony as to what Roalson confessed to her. Fingerprint evidence corroborated Leider's testimony in part; forensic examiners found a fingerprint

matching Roalson's left pinky finger on one of the knives. And Roalson does not suggest that the court restricted his opportunity to cross-examine Leider. The prosecution supported its charge that Roalson committed the murder by calling Davis and Walczak, who had not spoken to each other and yet testified that Roalson reported the same details to each of them. Therefore, even if the Wisconsin Court of Appeals was incorrect and the Constitution prohibited Leider's testimony, the error did not have a "substantial and injurious effect or influence" on the jury's verdict. *Brecht*, 507 U.S. at 637 (quotations omitted).

### III.

The Wisconsin Supreme Court's decision in *Luther Williams* is in line with the United States Supreme Court's holdings in *Melendez-Diaz* and *Bullcoming*. So, the court's rule is a reasonable application of clearly established law. Even if there were an error, it is not substantial enough to justify releasing Roalson. The district court's judgment denying Roalson's petition for a writ of habeas corpus is therefore AFFIRMED.